540 S.W.2d 668 (1976)
INDUSTRIAL FOUNDATION OF THE SOUTH, Petitioner,
v.
TEXAS INDUSTRIAL ACCIDENT BOARD et al., Respondents.
No. B-5535.
Supreme Court of Texas.
July 21, 1976.
Rehearing Denied October 6, 1976.
*671 Dixon & Petrovich, George J. Petrovich, Jr., Fort Worth, J. C. Hinsley, Austin, for petitioner.
Frank W. Elliott, Austin, Kronzer, Abraham & Watkins, W. James Kronzer, Houston, for respondents.
*672 DOUGHTY, Justice.
This case requires that we determine whether Texas' Open Records Act, Tex.Rev. Civ.Stat.Ann. art. 6252-17a (Supp.1974-1975) compels the Texas Industrial Accident Board to disclose to the Industrial Foundation of the South certain information concerning claims for workmen's compensation benefits. We hold that the information requested, with some exceptions to be noted, is "public information" as defined by the Open Records Act and must be disclosed to the requesting party.
Texas' Open Records Act ("the Act") became effective on June 14, 1973. Eight days thereafter, the Industrial Foundation of the South ("the Foundation"), a non-profit corporation comprised of approximately 282 member companies who employ workmen in the southwestern part of the United States, requested the Industrial Accident Board ("the Board") to furnish them the following items of information from every claim for workmen's compensation filed with the Board: the file number, the claimant's name and social security number, the name of claimant's employer, the nature of the injury, and the name of claimants attorney, if any. On June 29, 1973, the Board, in accordance with Section 7(a) of the Act, requested an opinion from the Attorney General to determine whether the information requested was "public information" as defined by Section 3(a). On November 1, 1973, the Attorney General issued Open Records Decision No. 8, which, although expressing concern as to the practical difficulties of supplying such a voluminous quantity of data, declared that no exception of Section 3(a) would justify withholding access to the requested information.
Subsequent to the Attorney General's decision the Foundation again requested the Board to furnish the items of information; again the Board refused. Soon thereafter, the Foundation brought this suit pursuant to Section 8 of the Act, in the District Court of Travis County, against the Board, its members and its executive director ("defendants") seeking a writ of mandamus to compel the Board to make the requested information available for its inspection.
As part of their discovery in preparation for this suit, the defendants served interrogatories on the Foundation which asked for detailed information regarding the organization, membership and activities of the Foundation. The defendants also asked the purpose for which the Foundation sought the information; whether such information had ever been used by a member of the Foundation as the basis for discharging or refusing to hire an employee; and the procedure used for furnishing information obtained by the Foundation to its members.
The Foundation moved to suppress all of these interrogatories on the ground that Section 5(b) of the Act precludes the Agency from inquiring into the purpose for which the information is requested. The trial court granted the Foundation's motion to suppress all the interrogatories except 2. A., B., and C., which asked the identity and position of the person answering the interrogatories, and 12, which asked the purpose for which the information was sought. In answer to Interrogatory No. 12 the Foundation replied:
The purpose of the information requested by Plaintiff's attorney is to be used to check out or determine the accuracy and truthfulness of a prospective employee's application for employment with a member company of the Industrial Foundation of the South. The requested information is compiled by the Plaintiff for pre-employment purposes only. No one other than a member company of the Industrial Foundation of the South can have the requested information.
All parties moved for summary judgment. The trial court granted summary judgment for the Foundation, holding that all the information requested is public information subject to disclosure under the Act, except for claims which involve "injury to the genitalia of the body." The trial court ordered that mandamus issue directing the defendants to make the requested information available for inspection and *673 copying by the Foundation. Defendants appealed this judgment to the Court of Civil Appeals.
The Court of Civil Appeals held (526 S.W.2d 211) that the trial court erred in suppressing defendants' interrogatories. The Court stated that, if one of the Foundation's purposes for seeking the information was illegal discrimination against workmen filing claims,[1] then the Foundation would not be entitled to mandamus, because the remedy is equitable in nature and those seeking it must come into court with clean hands. Thus the Court concluded that, by refusing to allow defendants to inquire into the Foundation's motives, the trial court had denied defendants the right to prepare a valid defense. The Court also held that the information requested was not excepted from the operation of the Act as "information deemed confidential by law, either Constitutional, statutory, or by judicial decision," (Section 3(a)(1)); and that the Act applies to claims filed before its effective date as well as to those filed afterward. The case comes to us on application by both parties. We shall first consider the points of error urged by the Foundation.

I. The Foundation's Application
The Foundation contends that the Court of Civil Appeals erred in holding that the trial court erroneously suppressed the Board's interrogatories. While denying that it intends to use the information which it seeks for any illegal or discriminatory purpose, the Foundation argues that the Act itself prohibits any consideration of the motives or purposes for which the information is sought in determining whether the information is public and open to inspection.
The purpose of the Open Records Act is declared in Section 1 as follows:
Pursuant to the fundamental philosophy of the American constitutional form of representative government which holds to the principle that government is the servant of the people, and not the master of them, it is hereby declared to be the public policy of the State of Texas that all persons are, unless otherwise expressly provided by law, at all times entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created. To that end, the provisions of this Act shall be liberally construed with the view of carrying out the above declaration of public policy.
Section 3 requires that a governmental body make all "public information ... available to the public during normal business hours ...."[2] Section 3(a) defines "public information" as "[a]ll information collected, assembled, or maintained by governmental bodies pursuant to law or ordinance or in connection with the transaction of official business ..., with the following exceptions only: ..."; there follow 16 exceptions, after which Section 3(b) provides: "This section does not authorize withholding of information or limit the availability of records to the public, except as specifically stated in this section."
Section 5(a) denominates the chief administrative officer of the governmental body as the "custodian" of its public records, and Section 5(b) provides:
Neither the custodian nor his agent who controls the use of public records shall make any inquiry of any person who applies for inspection or copying of public records beyond the purpose of establishing *674 proper identification and the public records being requested; ...
Finally, Section 14 provides, in part:
(a) This Act does not prohibit any governmental body from voluntarily making part or all of its records available to the public, unless expressly prohibited by law; provided that such records shall then be available to any person.

(b) This Act does not authorize the withholding of information or limit the availability of public records to the public, except as expressly so provided.

* * * * * *
(d) This Act shall be liberally construed in favor of the granting of any request for information.

* * * * * *
The procedure for determining whether information is public is set out in Sections 7 and 8 of the Act. Section 7 provides that a governmental body which has received a request for information may, within 10 days of the request, seek a decision from the Attorney General to determine whether the information is covered by the Act. If the Attorney General determines that the information is public and must be disclosed, but the governmental body still refuses to disclose it, Section 8 provides that "the person requesting the information or the attorney general may seek a writ of mandamus compelling the governmental body to make the information available for public inspection."
The Court of Civil Appeals has held that a court, relying upon its equitable powers inherent in the remedy of mandamus, may refuse to issue a writ of mandamus to compel disclosure even though the information sought is public information and not excluded by any exception, if the purpose for which the information is sought is illegal or in violation of a policy of the State. 526 S.W.2d at 216.
It is true that, although mandamus is a legal remedy, it is governed, to some extent at least, by equitable principles. Callahan v. Giles, 137 Tex. 571, 155 S.W.2d 793 (1941). In some instances the equitable doctrine of clean hands has been invoked to deny issuance of the writ. Westerman v. Mims, 111 Tex. 29, 227 S.W. 178 (1921); City of Wink v. Griffith Amusement Co., 129 Tex. 40, 100 S.W.2d 695 (1936).[3] But the extent of the court's equitable powers under Section 8 of the Act must be viewed in light of the legislative purpose and the statute's overall scheme. Section 1 declares that all persons are entitled to complete information; Section 3(b) declares that that section does not limit availability "except as specifically stated" therein; Section 14(b) states that the Act does not authorize the withholding of information "except as expressly so provided"; Section 14(a) requires that, if a governmental body does make any of its records available to the public, "such records shall then be available to any person"; finally, Section 5(b) prohibits the custodian from making any inquiry of the requestor beyond establishing his proper identification. We think the Act itself makes clear that the motives of the person requesting information are not to be considered in determining whether the information must be disclosed.[4] The legislative intent of making public information available to any person would be thwarted if a court were allowed to consider the requestor's motives even though the custodian may not do so.[5] We do not *675 believe that the Legislature's choice of mandamus as the remedy available to the requestor evinces legislative intent that the court is free to exercise equitable discretion in denying the writ where the exercise of such discretion would contravene the overall scheme of the Act. In effect, the result of the Court of Civil Appeals' opinion would be to deny access to information if the requestor cannot demonstrate a need for the information which the court considers lawful or appropriate, even though it clearly is "public" and not covered by any exception. Although we recognize that there is often much potential for abuse of information in government records,[6] the task of balancing the public's right of access to government records against potential abuses of the right has been made by the Legislature; the court's task is to enforce the public's right of access given by the Act. Since the purposes of the requestor are not relevant to a determination of whether the requested information must be disclosed, the trial court was not in error in suppressing defendants' interrogatories.

II. Application of Defendants Industrial Accident Board et al.
By their application the defendants assert several arguments contending that some or all of the information requested by the Foundation is not required by the Act to be disclosed. First, defendants contend that the information is not within Section 3(a)'s definition of "public information" when read in light of the legislative purpose enunciated in Section 1. Second, defendants contend that the information is excepted from disclosure by Section 3(a)(1) because it is deemed confidential under Board Rule 9.040 which defendants contend has the force and effect of a statute. Third, defendants assert that all claims filed with the Board prior to June 14, 1973, the effective date of the Act, are not covered thereby because those filing claims before that date relied upon Board Rule 9.040 to assure that their claims would be confidential. Fourth, defendants argue that the information is confidential under the federal constitutional right of privacy. Fifth, defendants argue that the information is deemed confidential by a common-law right of privacy. Finally, defendants urge that some of the compensation claims contain uniquely personal information, disclosure of which would violate the claimant's right to privacy, either constitutional or common-law. We shall consider each of these arguments in order.

A.
First, defendants assert that, although compensation claims may arguably come within the Act's definition of public information "[a]ll information collected, assembled, or maintained by governmental bodies pursuant to law or ordinance or in connection with the transaction of official business" the definition should not be read so broadly as to include the identity of individual claimants in light of the legislative purpose announced in Section 1. Defendants point out that the language of Section 1 declares it the policy of the Act to make available "full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees." Defendants contend that the names of individual claimants do not constitute "affairs of *676 government" or "official acts" of public officials, and therefore their disclosure would not further the legislative purpose announced in Section 1. Any other construction, defendants argue, would lead to the inconsistent result of requiring disclosure of the affairs of private citizens under an act intended to require disclosure of the affairs and workings of their government.
Defendants' argument is not without merit. Especially since the rapid expansion of government in recent years, many government records necessarily contain information relating to and identifying individual citizens and their activities. While the recent expansion of government has accented the need to assure access by private citizens to government records as an assurance that the people may remain informed about the activities of those who represent them,[7] the tremendous increase in the amount of information obtained and retained by the government has given rise to concern about the potential abuses which unlimited access to this information may foster.[8] The public's right to be informed about the affairs of government may thus conflict with the right of the individual to control access to information concerning his own affairs.[9] The balance between these two competing interests has not yet been struck with clarity, and the nature and extent of each interest is yet to be satisfactorily determined. We believe, however, that, except in unusual circumstances, the task of balancing these interests must be left to the Legislature. In the Open Records Act the Legislature has addressed the problem of access to government records. Although some provision has been made for safeguarding the privacy of the individual (see Section 3(a)(1), (2), (9), and (10)), the Act makes clear that it must "be liberally construed in favor of the granting of any request for information." Section 14(d). Moreover, the disclosure of individual names in government records may in some instances be essential to the expressed purpose of effectively allowing the public to police the actions of their government. Viewed in light of the statute as a whole, we are convinced that the definition of "public information" in Section 3(a) encompasses the information sought by the Foundation, including the name of the claimant. The information must therefore be disclosed unless it is excluded by one of the specific exceptions of Section 3(a).

B.
Defendants next contend that Board Rule 9.040 has the effect of excepting the requested information from mandatory disclosure under the Act. Rule 9.040,[10] which *677 was promulgated by the Board in 1961 pursuant to its general rule-making authority,[11] allows access to information on a claimant only to the claimant or his attorney, the insurer, the employer, or third party litigants, and only if there is an "open" claim before the Board or a court at the time the information is requested. Defendants argue that this rule has the force of statute, and that the information is therefore excepted from the Act by Section 3(a)(1), which excludes information deemed confidential by statute.
Many statutes make various records kept by state agencies confidential. See, e.g., Tex.Rev.Civ.Stat.Ann. art. 695j-1, § 10 (Supp. 1975-1976); art. 5547-12a (Supp.1975-1976); and art. 4445c, § 4 (Supp. 1974). It is clear that the records covered by these statutes fall within Section 3(a)(1)'s exception for records made confidential by statute. No such statute appears, however, in the Workmen's Compensation Act.[12] While a rule may have the force and effect of a statute in other contexts, we do not believe that a governmental agency may bring its information within exception 3(a)(1) by the promulgation of a rule. To imply such authority merely from general rule-making powers would be to allow the agency to circumvent the very purpose of the Open Records Act.[13] Absent a more specific grant of authority from the Legislature to make such a rule,[14] the rule must yield to the statute.

C.
Defendants argue that, even if the Board has no power to restrict access to records which are required to be disclosed by the Act, the Board certainly had such power prior to the Act's effective date. Since those filing claims prior to the Act did so while the Rule was in effect, defendants argue that all information concerning claims filed prior to the Act's effective date should remain confidential. We disagree.
First, it is clear that the Act is intended to apply to all records kept by governmental bodies, whether acquired before or after the Act's effective date. No exception is made for records which were considered confidential prior to June 14, 1973. Second, we do not believe that information should be excepted from disclosure merely because the individual furnishing such information did so with the expectation that access to the information would be restricted. The Legislature has not, by determining that government information formerly kept confidential should be disclosed, impaired any vested right of a claimant to the confidentiality of the information.[15] Unless there is such an impingement *678 upon a vested right, the Legislature may require disclosure of information even though it was deemed confidential by an agency rule prior to the effective date of the Act.[16] We therefore conclude that the Board may not withhold information required to be disclosed by the Act, whether acquired prior to the Act's effective date or thereafter, based upon its own Rule 9.040.

D.
We next turn to defendants' argument that the requested information is protected from disclosure by a constitutional right of privacy. Section 3(a)(1) excepts from disclosure information deemed confidential by constitutional law. Defendants contend that the right of privacy recently recognized by the United States Supreme Court as emanating from "the Fourteenth Amendment's concept of personal liberty and restrictions upon state action ..."[17] extends to all the information in its claims records and prohibits disclosure of that information to the public.
The Foundation asserts by counterpoint that the defendants have no standing to assert this argument, contending that a state agency cannot be heard to assert the constitutional rights of individual claimants. Whatever merit the Foundation's argument might have absent the Act, it is clear that the Legislature has, in effect, granted standing to a governmental unit to assert that its records are protected by a constitutional right of privacy. The governmental unit may request an Attorney General's opinion to determine whether requested information is excepted by Section 3(a)(1), thus effectively raising the constitutional issue. Certainly the agency is not foreclosed, as defendant in a suit to force disclosure, from challenging the Attorney General's conclusion that information is not excluded by the first exception. Furthermore, under Section 10(b), one who discloses information deemed confidential may be subject to fine or imprisonment. We hold that defendants have standing to assert the constitutional right of privacy of claimants whose files are in their custody. We must determine, therefore, whether any of the information requested by the Foundation is protected by the constitutional right of privacy. The United States Supreme Court reviewed its earlier decisions in this area in Roe v. Wade, 410 U.S. 113, 152-53, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973):
The Constitution does not explicitly mention any right of privacy. In a line of decisions, however, going back perhaps as far as Union Pacific R. Co. v. Botsford, 141 U.S. 250, 251, 11 S.Ct. 1000, 1001, 35 L.Ed. 734 (1891), the Court has recognized that a right of personal privacy, or a guarantee of certain areas or zones of privacy, does exist under the Constitution. In varying contexts, the Court or individual Justices have, indeed, found at least the roots of that right in the First Amendment, Stanley v. Georgia, 394 U.S. 557, 564, 89 S.Ct. 1243, 1247, 22 L.Ed.2d 542 (1969); in the Fourth and Fifth Amendments, Terry v. Ohio, 392 U.S. 1, 8-9, 88 S.Ct. 1868, 1872-1873, 20 L.Ed.2d 889 (1968), Katz v. United States, 389 U.S. 347, 350, 88 S.Ct. 507, 510, 19 L.Ed.2d 576 (1967), Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), see Olmstead v. United States, 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting); in the penumbras of the Bill of Rights, Griswold v. Connecticut, 381 U.S., at 484-485, 85 S.Ct. [1678] at 1681-1682; in the Ninth Amendment, Id., at 486, 85 S.Ct. [1678] at 1682 (Goldberg, J., concurring); or in the concept of liberty guaranteed by the first section of the Fourteenth Amendment, see Mayer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). *679 These decisions make it clear that only personal rights that can be deemed "fundamental" or "implicit in the concept of ordered liberty," Palko v. Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937), are included in this guarantee of personal privacy. They also make it clear that the right has some extension to activities relating to marriage, Loving v. Virginia, 388 U.S. 1, 12, 87 S.Ct. 1817, 1823, 18 L.Ed.2d 1010 (1967); procreation, Skinner v. Oklahoma, 316 U.S. 535, 541-542, 62 S.Ct. 1110, 1113-1114, 86 L.Ed. 1655 (1942); contraception, Eisenstadt v. Baird, 405 U.S., at 453-454, 92 S.Ct. [1029] at 1038-1039, 31 L.Ed.2d 349; Id., at 460, 463-465, 92 S.Ct. [1029] at 1042, 1043-1044 (White, J., concurring in result); family relationships, Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944); and child rearing and education, Pierce v. Society of Sisters, 268 U.S. 510, 535, 45 S.Ct, 571, 573, 69 L.Ed. 1070 (1925), Meyer v. Nebraska, supra.

It is apparent from the above that the term "right of privacy" is actually a generic term encompassing various rights recognized by the Court to be "inherent in the concept of ordered liberty." To date the Court has not delineated any comprehensive definition of the right. It is apparent, however, that the fundamental rights thus for recognized by the Court as deserving protection from governmental interference have been limited to intimate personal relationships or activities, freedoms of the individual to make fundamental choices involving himself, his family, and his relationships with others. It is also apparent that the right of privacy is primarily a restraint upon unwarranted governmental interference or intrusion into those areas deemed to be within the protected "zones of privacy."
Several commentators have suggested that the right of privacy protected by the U.S. Constitution actually has two meanings: first, the ability of individuals to determine for themselves whether to undergo certain experiences or to perform certain actsautonomy; and second, the ability of individuals "to determine for themselves when, how, and to what extent information about them is communicated to others"[18] the right to control information, or disclosural privacy. The Supreme Court has not distinguished between these two areas of privacy, but the distinction is useful in discussing the concept, especially in light of the problem now before us. Most privacy cases decided by the Supreme Court to date have concerned autonomy. Little has been said of the constitutional dimensions of disclosural privacy, which is the right asserted by defendants here. We believe, nevertheless, that effective protection of the fundamental "zones of privacy" thus far outlined by the Supreme Court necessarily implies a concomitant right to prevent unlimited disclosure of information held by the government which, although collected pursuant to a valid governmental objective, pertains to activities and experiences within those zones of privacy. The individual does not forfeit all right to control access to intimate facts concerning his personal life merely because the State has a legitimate interest in obtaining that information. Just as the State's intrusion into the individual's zones of privacy must be carefully limited, so must the State's right to reveal private information be closely scrutinized as well.[19]
*680 It is also clear, however, that not every publication of intimate or embarrassing information about an individual constitutes an invasion of a constitutionally protected zone of privacy. In the case of Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405, 44 U.S.L.W. 4337 (1976), recently decided by the U.S. Supreme Court, plaintiff's name and photograph were included in a flyer of "active shoplifters" distributed to local merchants by the police chief of Louisville, Kentucky, after plaintiff had been arrested on a shoplifting charge. The charge was subsequently dismissed, and plaintiff sued the police chief under 42 U.S.C. § 1983, alleging, inter alia, that the police chief had invaded his constitutional right of privacy while acting under color of State law. The Court denied that plaintiff had stated a cause of action:
While there is no "right of privacy" found in any specific guarantee of the Constitution, the Court has recognized that "zones of privacy" may be created by more specific constitutional guarantees and thereby impose limits upon government power. See Roe v. Wade, 410 U.S. 113, 152-153, 93 S.Ct. 705, 726, 35 L.Ed.2d 147, 176-178 (1973). Respondent's case, however, comes within none of these areas. He does not seek to suppress evidence seized in the course of an unreasonable search. See Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, 581 (1967); Terry v. Ohio, 392 U.S. 1, 8-9, 88 S.Ct. 1868, 1872-1973, 20 L.Ed.2d 889, 898 (1968). And our other "right of privacy" cases, while defying categorical description, deal generally with substantive aspects of the Fourteenth Amendment. In Roe the Court pointed out that the personal rights found in this guarantee of personal privacy must be limited to those which are "fundamental" or "implicit in the concept of ordered liberty" as described in Palko v. Connecticut, 301 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288, 292 (1937). The activities detailed as being within this definition were ones very different from that for which respondent claims constitutional protectionmatters relating to marriage, procreation, contraception, family relationships, and child rearing and education. In these areas it has been held that there are limitations on the States' power to substantively regulate conduct.
Respondent's claim is far afield from this line of decisions. He claims constitutional protection against the disclosure of the fact of his arrest on a shoplifting charge. His claim is based not upon any challenge to the State's ability to restrict his freedom of action in a sphere contended to be "private," but instead on a claim that the State may not publicize a record of an official act such as an arrest. None of our substantive privacy decisions hold this or anything like this, and we decline to enlarge them in this manner.

Paul v. Davis, 424 U.S. at 713, 96 S.Ct. at 1166, 44 U.S.L.W. at 4343 (1976).
See also Laird v. Tatum, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972); Rosenberg v. Martin, 478 F.2d 520 (2nd Cir. 1973), cert. denied, 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973); Thom v. New York Stock Exchange, 306 F.Supp. 1002 (S.D.N. Y.1969), affirmed sub nom. Miller v. NYSE, 425 F.2d 1074 (2nd Cir. 1970), cert. denied, 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970); Lamont v. Commissioner of Motor Vehicles, 269 F.Supp. 880 (S.D.N.Y.1967), affirmed, 386 F.2d 449 (2nd Cir. 1967), cert. denied, 391 U.S. 915, 88 S.Ct. 1811, 20 L.Ed.2d 654 (1968); and Fifth Avenue Peace Parade Committee v. Gray, 480 F.2d 326 (2nd Cir. 1973), cert. denied, 415 U.S. 948, 94 S.Ct. 1469, 39 L.Ed.2d 563 (1974). Compare York v. Story, 324 F.2d 450 (9th Cir. 1963), cert. denied, 376 U.S. 939, 84 S.Ct. 794, 11 L.Ed.2d 659 (1964); Merriken v. Cressman, 364 F.Supp. 913 (E.D.Pa.1973).
Thus, the State's right to make available for public inspection information pertaining to an individual does not conflict *681 with the individual's constitutional right of privacy unless the State's action restricts his freedom in a sphere recognized to be within a zone of privacy protected by the Constitution. We turn now to an examination of the information sought by the Foundation to determine whether that information is within a zone of privacy. The data requested identifies the claimant, the nature of his injuries, his employer and his attorney. The information normally does not concern matter relating to marriage, procreation, contraception, family relationships, or child rearing and education, nor would its publication infringe upon a claimant's right of free association. Even though a workman's knowledge that information concerning his claim will be available for public inspection may deter him from exercising his statutory right to file a claim, the general availability of such information would not adversely affect any right thus far recognized to be within a constitutionally protected zone of privacy. We therefore hold that the information requested by the Foundation is not excepted by Section 3(a)(1) as information deemed confidential by constitutional law.

E.
Defendants next contend that the requested information is "deemed confidential... by judicial decision" under Section 3(a)(1). Defendants assert that by this provision the Legislature intended to delegate to the courts a duty to determine what information should be excepted from disclosure as confidential by balancing in each case the interest in privacy against the interest in disclosure, thus creating a common-law privacy doctrine which would except the information involved "by judicial decision." As authority for this proposition defendants cite the Freedom of Information Act, 5 U.S.C. § 552 (1967), as amended, (Supp.1975-1976), which is in many ways similar to Texas' Open Records Act. Section 552(b) of the Federal Act sets out the matters which are excepted from application of the Act. Exception 6 provides that the Act does not apply to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy; ..." Federal courts have interpreted the term "similar files" broadly, to include any files which "contain `intimate details' of a `highly personal nature.'" Robles v. Environmental Protection Agency, 484 F.2d 843, 845 (4th Cir.1973). The Supreme Court has recently construed this exemption to mean that Congress intended the courts to balance "the individual's right of privacy against the preservation of the basic purpose of the Freedom of Information Act `to open agency action to the light of public scrutiny.'" Rose v. Department of the Air Force, ___ U.S. ___, ___, 96 S.Ct. 1592, 1604, 48 L.Ed. 11, 44 U.S.L.W. 4503, 4509 (U.S. April 21, 1976). See also Getman v. National Labor Relations Board, 146 U.S. App.D.C. 209, 450 F.2d 670, 677 (1971); Wine Hobby USA, Inc. v. International Revenue Service, 502 F.2d 133, 136 (3d Cir. 1974).[20] Defendants urge us to apply a similar balancing test to determine whether information is "confidential ... by judicial decision" under the Open Records Act.
We do not believe that the interpretation proposed by defendants is reasonable. Although the Open Records Act is similar in many ways to the Freedom of Information Act, our State law contains no exception comparable to exception 6 of the federal act. Section 3(a)(2) of the Open Records Act does except "information in personnel files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." There is no such exception, however, for medical files, or for files "similar" to medical or personnel files, as is found in exception 6 of the federal act. Absent such a provision, we do not believe that a court is free to balance the public's interest in disclosure against *682 the harm resulting to an individual by reason of such disclosure. This policy determination was made by the Legislature when it enacted the statute. "All information collected, assembled, or maintained by governmental bodies" is subject to disclosure unless specifically excepted. We decline to adopt an interpretation which would allow the court in its discretion to deny disclosure even though there is no specific exception provided.

F.
Defendants next contend that the information sought by the Foundation is confidential by judicial decision by reason of this Court's opinion in Billings v. Atkinson, 489 S.W.2d 858 (Tex.1973). In that decision we recognized that "an unwarranted invasion of the right of privacy constitutes a legal injury for which a remedy will be granted." 489 S.W.2d at 860. We there upheld a jury verdict awarding Mr. Billings damages for the unauthorized installation of a wiretap device on his telephone by Mr. Atkinson. We stated, at 489 S.W.2d at 859:
The right of privacy has been defined as the right of an individual to be left alone, to live a life of seclusion, to be free from unwarranted publicity. 77 C.J.S. Right of Privacy § 1. A judicially approved definition of the right of privacy is that it is the right to be free from the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities. 62 Am.Jur.2d, Privacy § 1, p. 677, and cases cited.
The above statement of the Court reveals that the tort "invasion of privacy" is actually a recognition of several "privacy interests" considered to be deserving of protection. Professor William L. Prosser has categorized these interests into four distinct torts, each subject to different rules:
1. Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs.
2. Public disclosure of embarrassing private facts about the plaintiff.
3. Publicity which places the plaintiff in a false light in the public eye.
4. Appropriation, for the defendant's advantage, of the plaintiff's name or likeness.
William L. Prosser, Privacy, 48 Cal.L.Rev. 383, 389 (1960).
The interest recognized as deserving protection in Billings was the first listed above, freedom from unwarranted intrusion. The interest asserted by defendants on behalf of claimants most closely resembles the interest defined by Prosser as freedom from public disclosure of embarrassing private facts. Defendants contend that making the requested information available for public inspection would constitute public disclosure of private facts about individual claimants, and that the information must therefore be confidential by reason of the common-law right of the claimants to recover damages for the wrongful publication of the information.
We recognized in Billings, supra, that an individual has the right to be free from "the publicizing of one's private affairs with which the public has no legitimate concern," but the precise requirements for showing an invasion of this particular right of privacy have not yet been defined by the courts of this State. It is generally recognized, however, that an injured party, in order to recover for public disclosure of private facts about himself, must show (1) that publicity was given to matters concerning his private life, (2) the publication of which would be highly offensive to a reasonable person of ordinary sensibilities, and (3) that the matter publicized is not of legitimate public concern. See W. Prosser, Law of Torts § 117, p. 809 (4th ed. 1971) and cases there cited.[21] Defendants *683 assert that, if a governmental unit's action in making its records available to the general public would be an invasion of an individual's freedom from the publicizing of his private affairs, then the information in those records should be deemed confidential by judicial decision under Section 3(a)(1) of the Act. We agree. Webster's Third International Dictionary defines "confidential" as "known only to a limited few: not publicly disseminated: PRIVATE, SECRET." These are precisely the characteristics which information protected by this branch of the tort invasion of privacy must have. And, we believe that it is this type of information which the Legislature intended to exempt from mandatory disclosure under Section 3(a)(1) of the Act.
We must decide, therefore, whether any of the information requested by the Foundation is "private" within the meaning of the tort law, and whether the Board's action in making the information available to the public would constitute a wrongful "publicizing" of such information and thus an invasion of a claimant's right of privacy.
The first requirement for wrongful publication of private information is that the information contain highly intimate or embarrassing facts about a person's private affairs, such that its publication would be highly objectionable to a person of ordinary sensibilities. Defendant Jerry Belcher, the Executive Director of the Industrial Accident Board and custodian of its records, filed an affidavit in the trial court in opposition to the Foundation's motion for summary judgment, in which he alleged that many of the claims filed with the Board contain matters of extreme privacy which, if released, would cause extreme embarrassment to the injured claimant. Belcher cited examples of such claims, including a claim for injuries arising from a sexual assault of a female clerk following an armed robbery; a claim on behalf of illegitimate children for benefits following their father's death; a teacher's claim for expenses of a pregnancy resulting from the failure of a contraceptive device; claims for psychiatric treatment of mental disorders following workrelated injuries; claims for injuries to sexual organs, and for injuries stemming from an attempted suicide; and claims of disability caused by physical or mental abuse by co-employees or supervisors. Belcher alleged that
[m]any of these claims by their nature and the wording of the claim involve highly private matters which, if divulged to the public-at-large, would result in the violation of individual claimant's and others right of privacy.
The claims referred to by Mr. Belcher are not in the record before us. Nevertheless, if there are in fact claims containing such information, as Mr. Belcher has alleged (and in reviewing the trial court's summary judgment we must accept as true all allegations of the opposing party), we are satisfied that at least some of these claims are of such a nature that their publication would be highly offensive to a reasonable person. This criterion is therefore satisfied at least as to some information contained in claims in the custody of Mr. Belcher.
Invasion of the privacy interest protected by this branch of the tort also requires that publicity be given to the private affairs of the individual. Would making claim files available for public inspection constitution such publicity? It is generally agreed that the publicity requirement of this tort is not synonymous with the publication requirement of the law of defamation, wherein publication to one other is sufficient to constitute defamation. "Publicity" requires communication to more than a small group of persons; the matter must be communicated to the public at large, such that the matter becomes one of public *684 knowledge.[22] It may be argued that the mere placing of private matter in a record available for public inspection does not "give publicity" to such matter, since the matter is not thereby communicated to anyone, much less to the public at large. No publicity would occur, according to this argument, unless a citizen examined the public record and communicated the information therein to a large number of people. It would necessarily follow that no privacy interest is invaded merely by making private information available for public inspection.
The requirement of publicity, however, must be considered in light of the people's right to publicize information which is a matter of public record without fear of sanctions imposed by the State. Once information is made a matter of public record, the protection accorded freedom of speech and press by the First Amendment may prohibit recovery for injuries caused by any further disclosure of and publicity given to such information, at least if the information is at all newsworthy. In Cox Broadcasting Co. v. Cohn, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975), the Supreme Court held that the First and Fourteenth Amendments prohibit the State from imposing sanctions for the publication of information contained in official court records available for public inspection. The Court stated, at 420 U.S. 495-496, 95 S.Ct. at 1046:
By placing the information in the public domain on official court records, the State must be presumed to have concluded that the public interest was thereby being served. Public records by their very nature are of interest to those concerned with the administration of government, and a public benefit is performed by the reporting of the true contents of the records by the media. The freedom of the press to publish that information appears to us to be of critical importance to our type of government in which the citizenry is the final judge of the proper conduct of public business. In preserving that form of government the First and Fourteenth Amendments command nothing less than that the States may not impose sanctions on the publication of truthful information contained in official court records open to public inspection.
* * * * * *
... If there are privacy interests to be protected in judicial proceedings, the States must respond by means which avoid public documentation or other exposure of private information. Their political institutions must weigh the interests in privacy with the interests of the public to know and of the press to publish.
The Court thus held that the State may not protect an individual's privacy interests by recognizing a cause of action in tort for giving publicity to highly private facts, if those facts are a matter of public record.
It therefore appears that, if the State wishes to protect a citizen's privacy interest in matters recorded in documents kept by the State, it must do so by restricting the availability of those documents to the public rather than by imposing sanctions on those who would publicize such matters to which they have a right of access. In order to protect the individual's privacy interest in information compiled in government records, it must be assumed that for purposes of Section 3(a)(1) of the Act, when a governmental unit makes information in its files available for public inspection, the information is sufficiently "publicized" to invoke the protection accorded such matters by the tort law. To hold otherwise would be to deny an individual any protectable privacy interest in private information disclosed to a governmental unit, if such information would otherwise be "public information."
The last requirement for an actionable invasion of privacy is that the information *685 publicized not be of legitimate concern to the public. This requirement is necessarily one which can only be considered in the context of each particular case, considering the nature of the information and the public's legitimate interest in its disclosure. While the Open Records Act has declared the policy of this State to be that all "public information" kept by government is of legitimate public concern, the Legislature has also recognized in Section 3(a)(1) that, in some instances, the individual's interest in confidentiality may outweigh the public's interest in disclosure. There may be circumstances in which the special nature of the information makes it of legitimate concern to the public even though the information is of a highly private and embarrassing nature. In general, however, the public will have no legitimate interest in such highly private facts about private citizens. Unles, therefore, the person requesting information of such a nature from the governmental unit can show special circumstances which make such private facts a matter of legitimate public concern, we believe that the information should be excepted from the mandatory disclosure provisions of the Act as information deemed confidential by a common-law right of privacy under Section 3(a)(1). We should make clear that the particular interest of the requestor, and the purposes for which he seeks the information, are not to be considered in determining whether the matter requested is of legitimate concern to the public, except insofar as the requestor's interest in the information is the same as that of the public at large. As we have stated above, the Act makes clear that the motives of the individual requestor are not relevant to the determination of whether the matter requested is "public information."
The Foundation contends that, by disclosing the facts of their claim to the Board, claimants have waived or forfeited any right of privacy which they might have had in such information. We disagree. We stated above that an individual does not forfeit all right to maintain the confidentiality of his personal affairs merely because he has disclosed facts about those affairs to a unit of government. Although voluntary disclosure of private information would generally constitute a waiver of the individual's privacy interest in that information, the voluntariness of the disclosure should be viewed in light of the circumstances under which the disclosure is made. Much information is disclosed to the government as a prerequisite to the receipt of government benefits which are of such importance to the recipient that the disclosure of private information incident thereto may hardly be considered voluntary. We cannot say that an injured workman impliedly consents to the government's publication of private information about his injury merely by filing his claim for compensation with the Board; nor do we believe that the acceptance of compensation benefits should necessarily be contingent upon a waiver of the claimant's right to assert the privacy of such information, absent some expressed legislative intent to that effect. We decline to hold that claimants have waived any legally protected right of privacy in information contained in their claim files by filing them with the Board.
To summarize: information contained in workmen's compensation claim files is excepted from mandatory disclosure under Section 3(a)(1) as information deemed confidential by law if (1) the information contains highly intimate or embarrassing facts the publication of which would be highly objectionable to a reasonable person, and (2) the information is not of legitimate concern to the public. If the information meets the first test, it will be presumed that the information is not of legitimate public concern unless the requestor can show that, under the particular circumstances of the case, the public has a legitimate interest in the information notwithstanding its private nature.
Since it appears that the trial court has not considered the individual files which defendants allege are private, and since it clearly appears that some of these files may contain personal information the publication of which would be highly objectionable to a reasonable person, it follows *686 that the trial court's summary judgment for the Foundation was improper. We therefore remand the case to the trial court for its determination, in light of this opinion, whether any of the information should be withheld from disclosure because confidential. For the guidance of the trial court, we consider it appropriate to make some further observations concerning the information requested and the procedure for its review.
The Foundation has requested the name of each claimant, the nature of his injuries, and the names of his employer and his attorney. It is evident that any highly personal information in these files will in most cases refer to the nature of the injury sustained. If the nature of a particular claim is held to be confidential, only that information need by withheld from disclosure. As we have already stated, there is nothing intimate or embarrassing about the fact, in and of itself, that an individual has filed a claim for benefits. The claimant's name may therefore normally be disclosed, as may other information in the claimant's file which does not itself reveal private facts, even though information concerning the nature of his injury is withheld.
In reviewing the information which defendants assert is exempt from disclosure, the trial court should follow the same procedure which the Act dictates for submitting claimed exemptions to the Attorney General. Section 7(b) provides that "[t]he specific information requested shall be supplied to the attorney general but shall not be disclosed until a final determination has been made." Similarly, the claims containing allegedly private information should be supplied to the trial court for an in camera inspection and determination whether and to what extent information should be deleted from those files. We believe that this procedure will best protect the privacy interests of the individual, and at the same time will effectively protect the public's right to inspect public records.
We recognize that the individual claimant's identity is the primary item of information which the Board wishes to keep confidential under Section 3(a)(1) of the Act, because of its allegation that the Foundation intends to use the information to discriminate against claimants. Our conclusion, however, is that the Act prohibits consideration of the motives of the requesting party in determining whether information must be disclosed. The sole criteria for determining whether information is except from disclosure as "confidential by judicial decision" are whether the information is of legitimate public concern and whether its publication would be highly objectionable to a reasonable person. If the Legislature intended that other criteria be considered in deciding whether information is open to inspectionif it desires to change to wording of the statuteit will have an early opportunity to do so at the convening of the next legislative session. The duty of this Court is to enforce the legislative intent as written.
We also recognize the enormity of the task which a case-by-case review of these workmen's compensation files may entail. We believe, nevertheless, that the effective protection of the individual's right of privacy, and the effective application of the policy of openness of government records mandated by the Open Records Act, necessitate the result which we have reached. The individual's right to maintain some degree of privacy in the affairs of his personal life must not be forgotten in the effort to maintain the openness of governmental activities. Even in the complex and closely regulated bureaucracy of today's society, the individual's right of privacy and the people's right to be informed may exist, if not in harmony, at least without irreconcilable conflict.

III. Means and Costs of Providing the Requested Information
One of the grounds alleged by defendants for denying the Foundation the information which it seeks was that, because of the magnitude of the information requested, it would be virtually impossible to furnish the information without hiring additional personnel and disrupting the activities of the *687 Board. In response to the Foundation's suggestion that a direct tie-in to the Board's computerized data processing system might be the most feasible way to provide the information, the Board's dataprocessing manager stated by affidavit that such a procedure "would cause a complete breakdown of our already overloaded agency workload; it would also require the complete restructuring of our data processing system and the hiring of personnel to supply the information requested" by the Foundation. In response to this problem the Court of Civil Appeals stated, at 526 S.W.2d 220-221:
While this is properly a matter for determination of the State Board of Control, under Sec. 9 of the Act, the possibility of abuse of computer privileges is one addressed to the sound discretion of the trial court. In the law review article entitled "Privacy and the Computer," V. Countryman, 49 Tex.L.Rev. 837, 863 (1971), the author points to some dire consequences which may flow from the invasion of privacy by entry into a computer system. We are of the opinion that such consequences may be appropriate for consideration by the trial court in the exercise of discretion in the award or denial of the writ of mandamus upon the trial which we have ordered.
Section 9(b) of the Act provides:
Charges made for access to public records comprised in any form other than up to standard sized pages or in computer record banks, microfilm records, or other similar record keeping systems, shall be set upon consultation between the custodian of the records and the State Board of Control, giving due consideration to the expenses involved in providing the public records making every effort to match the charges with the actual cost of providing the records.
It is our opinion that the Act does not allow either the custodian of records or a court to consider the cost or method of supplying requested information in determining whether such information should be disclosed. The least expensive method of supplying the information requested by the Foundation must be determined by the Board of Control and the custodian of the records in accordance with the guidelines set out by Section 9. The means of access to information in government records may be controlled by the determination of what records must be disclosed, insofar as the procedure must adequately protect information deemed confidential from improper disclosure. If a direct computer tie-in could not be effectuated without giving the Foundation access to information to which it is not entitled, then of course the procedure would not be acceptable. The least expensive method of providing the requested information, consonant with the trial court's final determination as to its confidentiality, should be left to the determination of the custodian and the Board of Control.
We are aware that the Board may incur substantial costs in its compilation and preparation of the information, especially in light of the case-by-case review and redaction of the files necessitated by Section 3(a)(1). Section 9 of the Act makes clear that all costs incurred in providing access to public records must be borne by the requesting party. Section 11 provides:
A bond for payment of costs for the preparation of such public records, or a prepayment in cash of the anticipated costs for the preparation of such records, may be required by the head of the department or agency as a condition precedent to the preparation of such record where the record is unduly costly and its reproduction would cause undue hardship to the department or agency if the costs were not paid.
It is evident that the very situation contemplated by the Legislature in enacting Section 11 is before us in this case. After a determination of the anticipated costs of providing the requested information by the chief administrative officer of the Industrial Accident Board and the Board of Control, the Foundation may be required to post a bond, in accordance with Section 11, as a condition precedent to the Board's preparation *688 of the records for the Foundation's inspection. These anticipated costs should of course include the expenses which may be incurred incident to the redaction of the records for the protection of individual claimants' privacy interests.
The Court of Civil Appeals' judgment reversed the judgment of the trial court and remanded the cause. Because we agree that the trial court's judgment was erroneous and that the cause must be remanded, we affirm the judgment of the Court of Civil Appeals. The cause is therefore remanded to the trial court for further consideration in accordance with this opinion.
DANIEL and SAM D. JOHNSON, JJ., concur with opinions.
REAVLEY, J., dissents in opinion joined by STEAKLEY, POPE and DENTON, JJ.
DANIEL, Justice (concurring).
It is my opinion that, with respect to the individual claim files of the Industrial Accident Board, the Legislature did not intend Article 6252-17a to be as broad as it was written. In this respect, I agree with some of the reasoning set forth in Justice Johnson's concurring opinion. On the other hand, as pointed out in the majority opinion, it is our duty to interpret and apply the statute as written. If this interpretation is broader or narrower than intended, the Legislature will soon have an opportunity to amend and clarify the statute. I concur with the majority opinion.
SAM D. JOHNSON, Justice (concurring).
Since a majority of this court has concluded that Rule 9.040 of the Industrial Accident Board is invalid as a matter of law under the Open Records Act, Article 6252-17a, Texas Revised Civil Statutes Annotated, this writer joins Justice Doughty's opinion insofar as it requires that certain information in the Board's records be withheld to protect the common law right of privacy of compensation claimants. However, this writer would remand the case to determine the validity of Rule 9.040.
The court's holding today, which will have the effect of releasing the bulk of the records maintained by the Industrial Accident Board for public inspection runs the risk of seriously damaging the Texas workmen's compensation system and frustrating the legislative purpose expressed in the Workmen's Compensation Act. This result is neither contemplated nor compelled by the Open Records Act.
A major objective of this state's workmen's compensation system is to provide workers with a means of asserting relatively small claims for job-related injuries that otherwise could not be asserted because of the prohibitive expenses incident to litigation. Under the holding of the majority of this court many workers may now find it too "expensive" to assert relatively small compensation claims because of the well-recognized risk of discrimination against workmen's compensation claimants. Rule 9.040 was originally promulgated by the Industrial Accident Board in 1961 to assure confidentiality regarding compensation claims and thereby reduce the risk of employment discrimination against claimants. The rule provides that as a prerequisite "for the furnishing of information on a claimant, there must be a workmen's compensation claim for the named claimant open or pending before this Board or on appeal to a court of competent jurisdiction from the Board at the time the record search request or request for information is presented." The rule further states that the requested information may be provided to the following persons only: "(1) the claimant; (2) the attorney for the claimant; (3) the carrier; (4) the employer at the time of the current injury; (5) third party litigants."
Rule 9.040 was promulgated pursuant to the Board's rule-making authority under Article 8307(4), Texas Revised Civil Statutes Annotated, which provides in part:
"The Board may make rules not inconsistent with this law for carrying out and enforcing its provisions ...."
The Workmen's Compensation Act does not contain any express provision limiting the availability of claim records, but the *689 Act contemplates promulgation by the Board of rules regarding confidentiality. Article 8307(9), T.R.C.S.A., provides in part:
"Upon the written request and payment of the fees therefor, which fees shall be the same as those charged for similar services in the Secretary of State's office, the board shall furnish to any person entitled thereto a certified copy of any order, award, decision or paper on file in the office of said board ...." [Emphasis added.]
By providing that the Board furnish its records only to "person[s] entitled thereto," the Legislature clearly indicated the Board's authority to promulgate rules limiting the disclosure of its records.
Section 3(a)(1) of the Open Records Act provides the following exception to the definition of "public information":
"information deemed confidential by law, either Constitutional, statutory, or by judicial decision; ..."
The question is whether records made confidential by a rule promulgated by the Industrial Accident Board pursuant to its statutory rule-making powers constitute "information deemed confidential by [statutory] law" under Section 3(a)(1) of the Open Records Act. The majority concludes that Section 3(a)(1) of the Open Records Act does not encompass records made confidential by Rule 9.040 for the following reasons:
"To imply such authority merely from general rule-making powers would be to allow the agency to circumvent the very purpose of the Open Records Act. Absent a more specific grant of authority from the Legislature to make such a rule, the rule must yield to the statute."
Two criticisms of the majority's analysis are evident. First, it is suggested that the validity under Section 3(a)(1) of the Open Records Act of an administrative rule regarding confidentiality depends upon the specificity of the legislative grant of rule-making authority. However, this appears to be a rather insubstantial basis for distinguishing between such rules. A more appropriate basis for determining what administrative rules are valid under Section 3(a)(1) of the Open Records Act would turn upon the relationship between the rule in question and the statutory objective that the rule is designed to achieve. If the statutory objective could not be obtained without promulgation of the rule, then records made confidential by the rule would constitute "information deemed confidential by [statutory] law." A second criticism of the majority's reasoning concerns the suggestion that administrative rule-making powers might thwart the Open Records Act if rules regarding confidentiality were valid under Section 3(a)(1) of the Act. However, the majority chooses to risk thwarting the Texas Workmen's Compensation Act in order to preserve the Open Records Act. The Open Records Act does not compel such a result, and the Act can be interpreted to avoid making a choice between it and the Workmen's Compensation Act. A closer examination of the legislative intent of the Open Records Act is necessary.
The Industrial Accident Board has contended that Rule 9.040 should be held valid under Section 3(a)(1) of the Open Records Act upon the principle that "[a] rule or order promulgated by an administrative agency acting within its delegated authority should be considered under the same principles as if it were the act of the Legislature." Texas Liquor Control Board v. Attic Club, Inc., 457 S.W.2d 41, 45 (Tex. 1970). Administrative rules are binding upon the courts if valid. Gerst v. Oak Cliff Savings and Loan Association, 432 S.W.2d 702 (Tex.1968). A presumption of validity attaches to administrative rules, Trapp v. Shell Oil Co., 145 Tex. 323, 198 S.W.2d 424 (1946), and in determining the validity of such rules courts are limited to deciding "whether the action is within the powers delegated to the agency and, if so, whether the action is arbitrary, capricious or unreasonable because not reasonably supported by substantial evidence, Texas State Bd. of Examiners in Optometry v. Carp, 388 S.W.2d 409, 415 (Tex.1965).
The essential weakness of the Board's contention is that the clear intent of the Open Records Act was to strike down administrative *690 rules regarding confidentiality. For this reason such administrative rules do not enjoy the normal presumption of validity. However, it is nevertheless possible that certain administrative rules on confidentiality may be valid under Section 3(a)(1) of the Open Records Act. The majority even suggests that such rules may be valid when promulgated pursuant to a reasonably specific grant of legislative authority.
This writer would hold that administrative rules on confidentiality are valid under Section 3(a)(1) of the Open Records Act (1) if promulgated pursuant to a statutory grant of rule-making authority, regardless whether such grant is specific or general, and (2) if the rule is necessary to the accomplishment of the legislative goals set forth in the statute.
What does the term "information deemed confidential by [statutory] law" mean? Does it merely encompass records that are specifically designated confidential by statute, or does it also include records made confidential by administrative rules that are necessary to accomplish statutory objectives set forth by the Legislature? The language of Section 3(a)(1) of the Open Records Act could obviously accommodate either interpretation.
The crucial issue is legislative intent. It might be argued that by listing in the Open Records Act sixteen exceptions to the definition of "public information," the Legislature indicated its intent to make public all records not specifically designated as confidential. However, this argument would miss the point. One of the specific exceptions to the definition of "public information" is "information deemed confidential by [statutory] law." This exception is broad enough to include information made confidential by administrative rules that are promulgated pursuant to statutory rule-making authority and are necessary to the accomplishment of designated statutory objectives.
The effect of the majority's holding today may well be to frustrate or destroy many legislative schemes that require some degree of confidentiality in order to function. It would be unreasonable to conclude that the Legislature intended such a result by enacting the Open Records Act. It is more likely that the Legislature intended that certain administrative rules promulgated pursuant to statutory rule-making powers be left unaffected by the Open Records Act, particularly where such rules are necessary to effectuate its intent in other legislative spheres. The purpose of the Open Records Act was to strike down administrative rules on confidentiality that are not necessary to the performance of designated statutory functions.
This is, of course, a summary judgment case. The summary judgment proof raises a fact issue as to whether Rule 9.040 is necessary to the performance of the Industrial Accident Board's statutorily prescribed duties. The Board's statutory duty to make the compensation claims procedure fully available to workers across the state is implicit in the various provisions of Article 8307, T.R.C.S.A. Consequently, it has been held that the Board may not impose additional burdens on a claimant's right to seek compensation benefits. Kelly v. Industrial Accident Board, 358 S.W.2d 874 (Tex.Civ. App.Austin 1962, writ ref'd). However, the summary judgment proof indicates that the public release of the Board's records may impose a substantial burden on the right of workers to seek compensation benefits.[1] The imposition of such a burden *691 upon potential claimants would be inconsistent with the Board's statutory duty to make the compensation procedure fully available to injured workers. It follows that, according to the summary judgment proof, the guarantee of confidentiality contained in Rule 9.040 may be necessary to the Board's performance of its statutory duties. If it is determined that Rule 9.040 is indeed necessary to the Board's performance of its statutory duties, the rule should be declared valid under Section 3(a)(1) of the Open Records Act.
In any event, this writer would hold that claims information supplied to the Board during the period from 1961 to 1973 is confidential by judicial decision under Section 3(a)(1) of the Open Records Act. Rule 9.040, promulgated in its original form in 1961, was a valid exercise of the Board's rule-making powers and would undoubtedly have been upheld by the courts but for the enactment in 1973 of the Open Records Act. The majority accurately states that claimants who supplied information to the Board between 1961 and 1973 in reliance on Rule 9.040 do not have a "vested right" to confidentiality; nevertheless, this court cannot overlook the blatant injustice that release of such records entails. Many claimants probably would have refrained from filing their claims if they had known that information given to the Board might subsequently be released to the public. Under the majority's holding these claimants are the unfortunate victims of a change in the law. They now face the serious risk of discharge from their jobs or employment discrimination, and they have no practical means of redress.[2] The majority seems to forget that the right of privacy on which it relies so heavily was once created by the courts to prevent a blatant injustice. The common law still has the capacity to deal with such matters.
REAVLEY, Justice (dissenting).
I would affirm the judgment of the trial court. I agree with everything in the opinion of the majority except what is written to support the holding that information on the nature of the injury, given in the claim for workmen's compensation filed with the Industrial Accident Board, may be "deemed confidential ... by judicial decision" and thus become exempt from disclosure by force of Section 3(a)(1) of the Texas Open Records Act.
We are shown no judicial decision which classifies the compensation claim or its contents as intrinsically "confidential." The Court finds the legislative intent in Section 3(a)(1) of the Open Records Act by an intricate route, which I shall now retrace. This Court has previously recognized a cause of action in tort for the unwarranted invasion of the right of privacy. Billings v. Atkinson, 489 S.W.2d 858 (Tex.1973). The Court there spoke of the right to recover damages where the defendant publicizes private facts or affairs of the plaintiff, the public disclosure being offensive to a person of ordinary sensibilities and the matter being beyond legitimate public concern. The publication of information (however obtained by the publisher) about the nature of the injuries of compensation claimants may or may not be actionable, but that question is not before us. No one seeks to publicize the information. The Court here reasons, however, that since making the compensation claim a public record would give all persons freedom to publicize the contents of the claim, the Legislature must have intended to keep confidential that information which could not be publicized with impunitywere that information not a matter of public record.
I doubt that we are entitled to read this intent into the Legislature's use of "confidential." *692 I read the Legislature to be concerned with confidentiality entirely apart from the manner of use of the information. The Open Records Act states that "it shall be liberally construed in favor of the granting of any request for information." The effect of the Court's construction in this case seems to me to require judicial review of the bulk of government records prior to their disclosurelest some embarrassing personal information be present. Section 10(a) of the Act provides that any person who distributes "confidential" information commits a crime punishable by as much as six months in jail and/or a fine of as much as $1,000. Public officials who face that consequence are not likely to take any chances on the release of records which might contain offensive information. This will also be a useful excuse for those who object to disclosure for other reasons. Those officials will await the order of a court before opening their records to the public. It was not the intention of the Legislature to turn over the administration of the Open Records Act to the judiciary. I would construe our question of legislative intent in favor of disclosure and then await legislative change if the result is objectionable. This area of confidentiality can best be mapped by statute.
Aside from all this, and whether looking at the bare language of Section 3(a)(1) or looking further at the tort action for the invasion of privacy as a guide to the construction of that statutory language, I do not regard the information included in a claim against an insurance company, being enforced through the Industrial Accident Board, as private. See Prosser, Law of Torts, p. 810 (4th ed. 1971).
The information of the nature of the claimant's injury is given to the employer and to the employer's insurance carrier as well as to the Industrial Accident Board. The employer or carrier may not be free to publicize all information of the injury, but they are certainly under no mandate to keep it secret. No confidential relationship exists. The parties are often adversaries. The employer and carrier may surely disclose this information to the Industrial Foundation of the South.
I liken a claim made and filed with the Industrial Accident Board to a cause in court. The claims are not filed for the purpose of collecting some governmental benefit but for purpose of establishing a valid claim against an opposing party. Court records are not protected by any common law right of privacy. An example is Hubbard v. Journal Publishing Company, 69 N.M. 473, 368 P.2d 147 (1962), in which a minor female brought suit against a newspaper for an alleged violation of her right of privacy for the publication of an article based on juvenile court records. In the article it was stated that the minor plaintiff's brother had sexually assaulted her and he had been sentenced to 60 days in a juvenile home. The court held that there was no invasion of privacy because these facts were part of the court records.
I realize that the Legislature could choose to deny public access to Industrial Accident Board records, but the claims before the Board are similar to lawsuits and I would not regard them to be private in nature either for purpose of construing the Open Records Act as now written or for purpose of delineating causes of action for the abuse of the right of privacy.
STEAKLEY, POPE and DENTON, JJ., join in this Dissent.
NOTES
[1] The defendants contend that the Foundation intends to use the information to blacklist or discriminate against workmen who have filed claims, in violation of Tex.Rev.Civ.Stat.Ann. arts. 5196c and 5196d (Supp.1975-1976), and art. 8307c (Supp.1975-1976).
[2] Emphasis supplied throughout unless otherwise noted.
[3] See also Moore v. Rock Creek Oil Corp., 59 S.W.2d 815 (Tex.Comm'n App. 1933, judgment adopted); State v. Gary, 163 Tex. 565, 359 S.W.2d 456, 473 (1962) (dissenting opinion); Crofts v. Court of Civil Appeals, 362 S.W.2d 101, 105 (Tex.1962) (dissenting opinion); Universal Underwriters Ins. Co. v. Ferguson, 471 S.W.2d 28, 31 (Tex.1971) (dissenting opinion); Todd v. Helton, 495 S.W.2d 213, 216 (Tex.1973) (concurring opinion).
[4] Our interpretation is in accord with the Attorney General's interpretation of the Act. See Tex. Att'y Gen. Op. No. H-242 (1974); Open Rec. Dec. Nos. 37 (1974), 51 (1974) and 63 (1974).
[5] The federal courts have encountered a similar problem in their interpretation of the Freedom of Information Act, 5 U.S.C. § 552 (1967) as amended (Supp.1975-1976). That Act requires that public records kept by federal agencies be available to "any person," and gives federal district courts "jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." [(§ 552(a)(3))]. Federal courts are divided whether they have equitable discretion under the Act to refuse to grant injunctive relief when disclosure would damage the public interest, even though the information is public and not within any of the Act's exceptions. See Rose v. Department of the Air Force, 495 F.2d 261, 269 (fn. 23) (2nd Cir. 1974), affirmed on other grounds, ___ U.S. ___, 96 S.Ct. 1592, 48 L.Ed.2d 11, 44 U.S.L.W. 4503 (1976); Getman v. NLRB, 146 U.S.App.D.C. 209, 450 F.2d 670 (1971); Wu v. National Endowment for Humanities, 460 F.2d 1030 (5th Cir. 1972), cert. denied, 410 U.S. 926, 93 S.Ct. 1352, 35 L.Ed.2d 586 (1973).
[6] The Foundation has vigorously argued that the purposes for which it seeks the information are lawful and do not violate any public policy. We express no opinion on this point.
[7] At least 42 states have enacted laws giving some degree of access to government records, many in the last three years. See Project, Government Information and the Rights of Citizens, 73 Mich.L.Rev. 971 (1975) at page 1163, footnote 1169.
[8] Congress has recently enacted the Privacy Act of 1974, 5 U.S.C.A. § 552a (Supp.1975-1976), to safeguard individual privacy interests by restricting information practices of federal agencies. Two states have recently passed privacy acts. Minn.Stat.Ann. §§ 15.162-168 (Supp.1975), and Ch. 194, §§ 1-12, 1975 Laws of Utah 870. In addition, the constitutions of California and Alaska contain express provisions protecting the privacy of individuals, which have been interpreted to restrict government access to or disclosure of private information to some degree. Alaska Const. art. I, § 22; Cal.Const. art. I, § 1. See White v. Davis, 13 Cal.3d 757, 120 Cal.Rptr. 94, 533 P.2d 222 (1975); Ravin v. State, 537 P.2d 494 (Alaska 1975).
[9] See Note, Invasion of Privacy and the Freedom of Information Act: Getman v. NLRB, 40 Geo.Wash.L.Rev. 527 (1972); Project, supra, 73 Mich.L.Rev. 971 (1975); Records, Computers, and the Rights of Citizens, Report of the Secretary's Advisory Committee on Automated Personal Data Systems, U.S. Dept. of H.E.W. (1973); Privacy and Information Systems in Texas, Report of the Senate Jurisprudence Committee of the 64th Texas Legislature (1975).
[10] Rule 9.040 reads as follows:

"As a prerequisite for approval of a request for a record check or for the furnishing of information on a claimant, there must be a workmen's compensation claim for the named claimant open or pending before this Board or on appeal to a court of competent jurisdiction from the Board at the time the record search request or request for information is presented to this Board. The first, middle and last name of the claimant, age and social security number, and if possible, dates of injury and the name of prior employers must be given in request for information. The Board will furnish the requested information or a record check only to the following: (1) the claimant; (2) the attorney for the claimant; (3) the carrier; (4) the employer at the time of the current injury; (5) third party litigants. Fees and charges for record requests may be obtained from the Industrial Accident Board." (Promulgated 1961, revised 1974.)
[11] Tex.Rev.Civ.Stat.Ann. art. 8307, § 4 (1967).
[12] A bill specifically excepting claims filed with the Board from the Open Records Act was introduced in the 64th Legislative Session; the bill, S.B. 496, was reported favorably by the Senate Jurisprudence Committee and was passed to engrossment on the floor of the Senate; but the bill was never presented for final passage by the Senate, and it died at the end of the session.
[13] The Attorney General's interpretation of Section 3(a)(1) is in accord with our conclusion. See Open Rec. Dec. Nos. 29 (1974), 46 (1974) and 95 (1974).
[14] See, e.g., Tex.Rev.Civ.Stat.Ann. art. 5221b-9(e)(1971), giving the Texas Employment Commission authority to promulgate rules of disclosure, and Att'y Gen.Op. No. H-626 (1975), which held that the Commission's rules do not conflict with the Open Records Act.
[15] Defendants cite Open Rec. Dec. No. 55A (1975), in which the Attorney General held that certain evaluative material in the personnel file of a university faculty member was not required to be disclosed under the Act because the information was given in exchange for an express promise of confidentiality made prior to the effective date of the Act. While we express no opinion as to the correctness of this ruling, we note that the circumstances are distinguishable from the case before us, because no express contract of confidentiality was here made by the Board in order to induce claimants to provide the information sought by the Foundation.
[16] Although we reach the same result on this issue as the Court of Civil Appeals, we do not base our result on any distinction between the Board's implied rule-making authority and the implied rule-making power of other state agencies.
[17] Roe v. Wade, 410 U.S. 113, 153, 93 S.Ct. 705, 727, 35 L.Ed.2d 147 (1973).
[18] A. Westin, Privacy and Freedom, p. 7 (1967). See also Beardsley, Privacy: Autonomy and Selective Disclosure, in Privacy 56 (J. Pennock & J. Chapman eds., 1971); Gross, The Concept of Privacy, 42 N.Y.U.L.Rev. 34 (1967); Note, Roe and paris: Does Privacy Have a Principle? 26 Stan.L.Rev. 1161 (1974).
[19] At least two United States Supreme Court cases have considered the confidentiality accorded information kept by the State to be relevant in determining whether the State could constitutionally obtain that information from its citizens: Shelton v. Tucker, 364 U.S. 479, 486, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960), and Law Students Civil Rights Research Council v. Wadmond, 401 U.S. 154, 157, 91 S.Ct. 720, 27 L.Ed.2d 749 (1971) (see footnote 4). See also California Bankers Ass'n v. Shultz, 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974); Roe v. Ingraham, 480 F.2d 102 (2nd Cir. 1973), on remand, 403 F.Supp. 931 (S.D.N. Y.1975), review granted sub nom., Whalen v. Roe, 423 U.S. 1313, 46 L.Ed.2d 18, 44 U.S.L.W. 3461 (1976); Schulman v. New York City Health and Hospitals Corp., 44 A.D.2d 482, 355 N.Y.S.2d 781 (1974); and City of carmel-by-the-Sea v. Young, 2 Cal.3d 259, 85 Cal.Rptr. 1, 466 P.2d 225 (1970).
[20] For a more complete analysis of this exemption, see Project, supra, 73 Mich.L.Rev. 971, 1078-1085 (1975).
[21] The American Law Institute has recently adopted the following definition of the tort, in Restatement (Second) of Torts, § 652D (Tent. Draft No. 22, 1976):

One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy if the matter publicized is a kind which
(a) would be highly offensive to a reasonable person, and
(b) is not of legitimate concern to the public.
[22] See W. Prosser, Law of Torts § 117, at p. 810. See also proposed comment a. to Rest.2d of Torts § 652D (Tent. Draft No. 22, 1976).
[1] Board Member Jim McCuan's summary judgment affidavit indicated that many injured workers are afraid to file compensation claims because of the threat of employment discrimination:

"As a member of the Industrial Accident Board, I have also been told of some employers discharging their own employee if he makes a claim for workmen's compensation benefits. I have spoken to employee organizations, seminars, union meetings and other functions and I have become well aware of the fear of some employees to file a claim for a serious and legitimate injury out of fear that such information will become known and that they will be either discharged or denied employment for having sought legal recovery for the injury."
[2] Article 8307c(1) provides:

"No person may discharge or in any other manner discriminate against any employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, instituted, or caused to be instituted, in good faith, any proceeding under the Texas Workmen's Compensation Act, or has testified or is about to testify in any such proceeding." See discussion of ineffectiveness of Article 8307c as a remedy for wrongful discharge or employment discrimination in Texas Tech Law Review, Volume 4, at 387 (1973).