

# The Attorney General of Texas

October 24, 1983

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Mike Driscoll
Harris County Attorney
1001 Preston, Suite 634
Houston, Texas    77002

Opinion No. JM-81

Re:  Are names and addresses of
parents of victims of sudden
infant death syndrome available
to the public under the Open
Records Act

Dear Mr. Driscoll:

You have asked the following question:

> Can a sudden infant death syndrome (SIDS)
> project formerly federally funded, but now funded
> by Harris County and operated by the Harris County
> Health Officer, release the names and addresses of
> SIDS parents?

As set forth in your brief, the relevant facts are as follows:

> Prior to the effective date of the Federal
> Omnibus Budget Reconciliation Act of 1981, the
> Harris County Health Officer was the local
> administrator for a federally funded Sudden Infant
> Death Syndrome (SIDS) Project.  The purpose of the
> project was to collect information about SIDS and
> to provide counseling services to the parents of a
> SIDS victim.  The names and addresses of suspected
> SIDS victims and their parents were provided to
> the project by the County Medical Examiner.  A
> project nurse would contact the victim's parents
> and offer the counseling services of the Project.
> The parents were also referred to voluntary
> community organizations, including the
> Houston-Harris County Chapter of the National SIDS
> Foundation.

> To the disappointment of the Houston Chapter, a
> number of the parents did not contact the Chapter
> after the initial referral by the Project.  This
> lack of participation prompted the Houston Chapter
> to request the names and addresses of all parents.

Upon receipt of this information the Chapter could initiate direct contact with the parents. On the advice of the Texas Department of Health Legal Division, the names were released without the consent of the parents.

Federal funding for this project ended September, 1982. Through its Health Officer, Harris County continues to operate the Project using County funds. The operation of this Project is for a proper County purpose and a proper use of County funds. V.T.C.S. art. 4447e-2 (Vernon's Supp. 1982-83). The Houston SIDS Chapter has requested that they be furnished the parents' names and addresses. The County Health Officer now asks that you determine whether the names and addresses are excepted from public disclosure.

Common law privacy exists in any information which contains highly intimate or embarrassing facts about a person such that its disclosure would be highly objectionable to a person of ordinary sensibilities. The information must also not be of legitimate concern to the public. Industrial Foundation of the South v. Industrial Accident Board, 540 S.W.2d 668, 679 (Tex. 1976), [hereinafter IAB]; see, e.g., Open Records Decision Nos. 351, 343, 339, 328, 316 (1982); 294, 268 (1981); 262, 258, 241 (1980).

You state that a SIDS death indicates nothing about a parent's fitness, moral or otherwise. From a purely scientific standpoint, this may be entirely accurate; as a practical matter, however, we believe that a sizable percentage of the general public is unenlightened and still believes that SIDS deaths are, at least to some extent, the product of some fault or shortcoming on the parents' part. As a result, we believe that the publication of the names of non-consenting parents whose children died from SIDS would invite some measure of public obloquy. The fact that such obloquy is entirely undeserved will afford little comfort to parents who are forced to endure it. We conclude, therefore, that the publication of this information could be "highly embarrassing" to these parents, and would be objectionable to a person of ordinary sensibilities.

Even if this information could not be deemed "highly embarrassing," it is, in our opinion, "highly intimate" within the meaning of the IAB test. The word "intimate" denotes, inter alia, "innermost" or "closely personal." Webster's New International Dictionary, 2nd Ed. The nexus between parents and their infant is so close that it is difficult to imagine many kinds of information more "highly intimate" to a parent than the death of a small child by a sudden, unexplained cause.

In IAB, supra, the Texas Supreme Court stated that information within one of the following "zones of privacy" delineated by the United States Supreme Court may be withheld from public disclosure: marriage, procreation, contraception, family relationships, and child rearing and education.   The court observed that although past decisions have focused upon privacy in the context of an individual's "autonomy," i.e., his right to decide for himself whether "to undergo certain experiences or to perform certain acts," "disclosural privacy" is also deserving of protection.  Id.  It stated:

> We   believe,   nevertheless,   that   effective protection of the fundamental 'zones of privacy' thus far outlined by the Supreme Court necessarily implies a concomitant right to prevent unlimited disclosure of information held by the government which,   although   collected   pursuant   to   a   valid governmental objective, pertains to activities and experiences within those zones of privacy.   The individual does not forfeit all right to control access to intimate facts concerning his personal life merely because the State has a legitimate interest in obtaining that information.

Id.

In our opinion, the fact that a parent's child died of SIDS constitutes  "information   held   by   the   government   which,   although collected  pursuant  to  a  valid  governmental  objective,  pertains  to activities  and  experiences  within"  the  "family  relationship,"  and perhaps the "child rearing," zone of privacy.  Although the zones of privacy delineated by the Supreme Court were derived from the United States Constitution, we believe that they bear directly upon the common  law  right  of  privacy.   In  our  opinion,  the  fact  that information falls within one of these "zones" provides substantial evidence  that  the  information  is  "highly  intimate."   We  conclude therefore  that  disclosure  of  the  names  of  parents  of  SIDS  victims would reveal "highly intimate or embarrassing facts about a person, such that its disclosure would be highly objectionable to a person of ordinary sensibilities."

To be excepted from required disclosure under common law privacy, information must, in addition to fitting in either of the above categories, be of no legitimate concern to the general public.  There is no evidence that the general public would be placed in any danger or deprived of any benefit of consequence by a failure to make public the names of parents of SIDS victims.  Nothing indicates, for example, that SIDS is a contagious disease.

A child's death from SIDS might also be contrasted from a child's death from physical abuse by a parent.  While a parent's physical

abuse of a child would certainly produce a far greater measure of public obloquy, and thus reveal "highly intimate or embarrassing facts" about that individual, the public interest in the two cases is entirely different.  In such an instance of physical abuse, the public interest is sufficient to overcome the parental right of privacy.  In the case of a SIDS death, on the other hand, the parent, like the child, is a helpless victim.  As a result, we do not believe the public interest is sufficient to overcome the revelation of "highly intimate or embarrassing facts."

It is thus our decision that the names and addresses of parents of victims of sudden infant death syndrome are excepted from disclosure by section 3(a)(1) of the Open Records Act, as information deemed confidential by law, specifically, the common law right of privacy.

### S U M M A R Y

The names of parents whose children have died from SIDS are protected from required disclosure by the common law right of privacy, and may not be released without the parents consent.

Very truly yours,

JIM   MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Jon Bible
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Jon Bible
Nancy Sutton