

# THE ATTORNEY GENERAL
# OF TEXAS

July 23, 1987

JIM MATTOX
ATTORNEY GENERAL

Honorable Paul W. Mayben
Camp County Attorney
P. O. Box 416
Pittsburg, Texas    75686

Opinion No.   JM-757

Re:   Right of an individual to copy
and reproduce public records in a
district or county clerk's office

Honorable Joe K. McGill
Gaines County Attorney
P. O. Box 728
Seminole, Texas    79360

Gentlemen:

Each of you asks about the right of members of the public to use
their own copying equipment to duplicate public records maintained by
a county or district clerk.  Mr. McGill also asks whether the Gaines
County clerk must either provide a duplicate microfilm of county
records or allow individuals to bring microfilm equipment into the
clerk's office to duplicate county oil and gas records.  Mr. Mayben
asks whether the cost of copies provided by the county and district
clerks may exceed the actual cost of providing the copies.

Information submitted in connection with your requests indicates
that this request was triggered, in part, because of the vast number
of oil and gas records sought by an information business serving the
oil and gas industry.  One such company wants to use its own equipment
in the county office to microfilm virtually all of the oil and gas
records of Gaines County for the past 10 years.  The company estimates
that the effort may take up to two weeks.  Because of the volume of
information sought, your request raises several issues about the cost
of standard copies compared with the cost of duplicating microfilm and
about the disruption caused by the county making all of the standard
copies by hand compared with the disruption caused by allowing a
requestor to make copies or to duplicate microfilm.

As a preliminary matter, it should be noted that this opinion
addresses only public rights regarding public records.  Under the
Texas Open Records Act, article 6252-17a, V.T.C.S., all information
held by governmental bodies must be released to the public unless the
information falls within one of the act's 18 specific exceptions to
required disclosure.  The act contains several exceptions that apply
to certain oil and gas records.  See art. 6252-17a, §3, subsecs.
(a)(1), (4), (5), (10), (13).  Moreover, section 10(a) of the Open
Records Act prohibits the distribution of "[i]nformation deemed

confidential under the terms of this Act." See also art. 6252-17a, §10(e). On the other hand, some of the information sought may relate to information filed with the county specifically as public notice. See, e.g., Tex. Prop. Code §56.001 et seq. (filing notice to secure lien against mineral interests). Because you do not ask about the availability of specific records, this opinion assumes that the information requested is not information deemed confidential by law.

The tenor of your requests also suggests that you may question the use of the Open Records Act for the purpose of conducting a business. One letter submitted to this office in connection with your request directly raises the question of the propriety of setting up a "microfilm business" in a county or district office. Section 5(b) of the Open Records Act prohibits a governmental body from inquiring "of any person who applies for inspection or copying of public records beyond the purpose of establishing proper identification." Consequently, it should be noted at the onset that although the Open Records Act may not have been intended to facilitate "information businesses," the commercial use for which these records are sought is irrelevant to the question of their accessibility and cost to the public.

One of the persons requesting information from you asserts that article 3930, V.T.C.S., grants members of the public the right to make copies of public records with their own copying equipment. Article 3930 governs the cost of county-issued certified copies of certain county records. See Attorney General Opinion H-552 (1975). Article 3930 provides, in part:

> However, nothing in this Act shall be construed to limit or deny to any person, firm, or corporation, full and free access to any papers, documents, proceedings and records referred to in this Act, the right of such parties to read and examine the same, and to copy information from any microfilm or other photographic image, or other copy thereof, under reasonable rules and regulations of the county clerk at all reasonable times during the hours the county clerk's office is open to the public, and without making payment of any charge, being hereby established and confirmed. (Emphasis added).

The main thrust of this statutory caveat is to emphasize that persons who wish to inspect certain public documents that are usually obtained in certified form may inspect and copy the documents without paying for certification.

Although article 3930 indicates that members of the public may make copies themselves, it does not guarantee a specific method of copying or an unlimited right to copy. Article 3930 refers to copying

information "<u>from</u> any microfilm or other photographic image," not to making a copy of microfilm or other photographic image. The legislature probably envisioned a member of the public taking notes on specific items of information by hand. It is unlikely that the legislature contemplated the full range of portable copying equipment available today when it enacted this provision of article 3930 in 1967. <u>See generally</u> Attorney General Opinion JM-351 (1985) (Texas Open Meetings Act does not guarantee public right to videotape public meetings). Consequently, article 3930 does not grant an unlimited right to make copies.

Moreover, article 3930 by its terms covers only the records referred to in article 3930. You do not indicate whether the requests you received cover other public records. Because article 3930 does not grant any right of access greater than that granted by the Open Records Act, an examination of the Open Records Act is instructive. Additionally, the legislature enacted article 3930 several years prior to the enactment of the Open Records Act. <u>See</u> Acts 1967, 60th Leg., ch. 681, at 1789. At this time, the public held no general right of access to public records. In 1973, the enactment of the Open Records Act created a general right of access to public records. Acts 1973, 63rd Leg., ch. 424, at 1112. Because article 3930 is not inconsistent with the Open Records Act, the Open Records Act does not implicitly repeal the paragraph of article 3930 in question. Nevertheless, the Open Records Act is the primary authority governing public access to public records.

Sections 4 and 5 of the Open Records Act provide in part:

> Sec. 4. On application for public information to the custodian of information in a governmental body by any person, <u>the custodian shall promptly produce such information for inspection or duplication, or both, in the offices of the governmental body.</u> If the information is in active use or in storage and, therefore, not available at the time a person asks to examine it, the custodian shall certify this fact in writing to the applicant and set a date and hour within a reasonable time when the record will be available for the exercise of the right given by this Act. Nothing in this Act shall authorize any person to remove original copies of public records from the offices of any governmental body without the written permission of the custodian of the records.

> Sec. 5. (a) The chief administrative officer of the governmental body shall be the custodian of public records. . . . <u>It shall be the duty of the custodian of public records, subject to penalties provided in this Act, to see that the public</u>

> records are made available for public inspection
> and copying; that the records are carefully
> protected and preserved from deterioration,
> alteration, mutilation, loss, removal, or destruc-
> tion; and that public records are repaired,
> renovated, or rebound when necessary to preserve
> them properly. When records are no longer
> currently in use, it shall be within the discretion
> of the agency to determine a period of time for
> which said records will be preserved. (Emphasis
> added).

Subsections (b) and (e) of section 10 make it a misdemeanor and
official misconduct to fail or refuse, with criminal negligence, "to
give access to, or to permit or provide copying of, public records."
(Emphasis added).

The Open Records Act establishes that members of the public have
some degree of authority to copy public records themselves. Section 4
requires governmental bodies to produce public information "for
inspection or duplication, or both." (Emphasis added). Section 5(a)
requires governmental bodies to make public records "available for
public inspection and copying." (Emphasis added). In Open Records
Decision No. 152 (1977), this office stated that the act gives the
requesting party the option to take notes from or to pay for the
duplication of public records, or both. If members of the public may
take notes from public records, it would be anomalous to say that they
cannot also use other methods of duplication. Like the legislative
intent behind article 3930, however, it is unlikely that the
legislature contemplated the full range of portable copying equipment
available today when it enacted the Open Records Act in 1973.

Consequently, a governmental body may refuse to allow members of
the public to duplicate public records by means of portable equipment
when it is unreasonably disruptive of working conditions. Moreover,
if giving the requestor access to certain records would also give the
requestor access to confidential information, the requestor's option
of access must be denied. See Industrial Foundation of the South v.
Texas Industrial Accident Board, 540 S.W.2d 668, 687 (Tex. 1976),
cert. denied, 430 U.S. 931 (1977); Attorney General Opinion JM-672
(1987). Both article 3930 and the Open Records Act place practical
limits on the public's right to copy public records. Article 3930
expressly authorizes county and district clerks to impose reasonable
rules and regulations on public copying of records covered by article
3930. Section 13 of the Open Records Act provides that governmental
bodies "may promulgate reasonable rules of procedure by which public
records may be inspected efficiently, safely, and without delay."
Additionally, section 4 of the Open Records Act authorizes govern-
mental bodies to refuse access while records are in "active use."
These provisions cannot, however, be used to deny a requestor access
to records. For example, the exception for "active use" permits a

governmental body to avoid only unreasonable disruption of its immediate business. See Open Records Decision Nos. 225 (1979); 148 (1976).

Accordingly, requests from members of the public to copy public records with their own equipment may be denied when the requests raise questions of safety or efficiency or threaten the unreasonable disruption of the business of the governmental body. See art. 6252-17a, §§4, 13. The reasonableness and safety of each request must be assessed independently. Relevant factors would include whether the county or district clerk's office has the physical characteristics necessary to comply with the request. For example, bringing in large copying equipment could create a safety hazard by blocking an entryway, hallway, or exit. Some copying equipment could create a fire hazard by overloading the electrical system in an older building. The increased noise in a small space could hamper county employees in performing their public duties. Another relevant factor is the safety of the copying to the records themselves. The governmental custodian of records has a duty to protect government records from damage. See art. 6252-17a, §§5, 12. No single, fixed test can be articulated to cover all requests to copy public records. It should be noted, however, that if a governmental body determines that it cannot allow public copying of public records because to do so would threaten unreasonable disruption or safety hazards, the governmental body must nevertheless provide copies of the records. When a particularly voluminous request is received, it is conceivable that allowing members of the public to make their own copies with their own equipment would cause less disruption of county or district business than having county or district employees make the copies.

Additionally, if a governmental body chooses to permit members of the public to use other kinds of portable copying equipment, it must deal evenhandedly with various members of the public who wish to use portable copying equipment. Moreover, the governmental body must not allow the use of portable copying equipment to interfere with other people's rights to inspect and copy records in person.

Mr. Mayben also asks whether the county may produce income for the county from charges for public records, i.e., whether the cost of copies provided by the county and district clerks may exceed the actual cost of providing the copies. Section 9(a) of the Open Records Act provides that the cost of "noncertified photographic reproductions of public records comprised of pages up to legal size shall not be excessive." Section 9(b) indicates that charges for access to public records in any form other than up to standard-sized pages should approximate the actual cost of providing the records. The State Purchasing and General Services Commission determines costs of public records in consultation with state agencies. See Attorney General Opinion Nos. JM-672 (1987); JM-292 (1984); JM-114 (1983). Section 9(d) provides that "[t]he charges for copies made in the district clerk's office and the county clerk's office shall be as otherwise

provided by law." As indicated, article 3930 specifies the fees only for certified copies of documents covered by article 3930. Attorney General Opinion H-552 (1975). Section 10 of article 3930 provides "For such other duties prescribed, authorized, and/or permitted by the Legislature for which no fee is set by this Act, reasonable fees shall be charged." In Attorney General Opinion H-552 (1975), this office construed this provision of article 3930 and concluded

> that such factors as the expense of locating the records, making them physically available for inspection and copying, and 'overhead' charges for rental of space, furniture, or fixtures, may not be considered in determining a reasonable fee for providing uncertified copies of records filed in the office of county clerks.

See also Attorney General Opinion Nos. JM-292; JM-114. Accordingly, charges made for reproductions of public records cannot exceed the actual cost of providing those reproductions. Cf. Attorney General Opinion Nos. JM-672; JM-292.

## S U M M A R Y

The Texas Open Records Act, article 6252-17a, V.T.C.S., does not grant members of the public an unlimited right to copy, with their own copying equipment, information deemed public under the Open Records Act. Requests from members of the public to copy public records with their own equipment may be denied when the requests raise questions of safety or efficiency or threaten the unreasonable disruption of the business of the governmental body. The reasonableness and safety of each request depends on the facts surrounding the request.

Article 3930, V.T.C.S., governs only charges for certified copies of documents covered by article 3930. The cost of copies of non-certified public records cannot exceed the actual cost of providing those reproductions.

Very truly yours

JIM MATTOX
Attorney General of Texas

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jennifer Riggs
Assistant Attorney General