

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-06-298-CV

REV. JOSEPH TU NGOC NGUYEN, O.P.                    APPELLANT

V.

THE DALLAS MORNING NEWS, L.P. AND                    APPELLEES
THE FORT WORTH STAR-TELEGRAM

------------

### FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Rev. Joseph Tu Ngoc Nguyen, O.P. appeals the trial court's order unsealing sixteen pages of his personnel file and declaring them to be "court records" under Texas Rule of Civil Procedure 76a(2).[2] We affirm the trial court's order.

---

[1] *See* TEX. R. APP. P. 47.4.

[2] The only documents at issue in this appeal are these sixteen pages, Bates numbered 10-04-04 Order 0210–0225.

## I. Background

In the underlying lawsuit, John Does I and II sued the Roman Catholic Diocese of Fort Worth ("the Diocese"); Bishop Joseph P. Delaney, individually and as Bishop; his predecessors and successors; and Father Thomas H. Teczar, alleging that Teczar sexually abused them when they were minors. Appellant Rev. Joseph Tu Ngoc Nguyen, O.P. ("Father Tu") was not a party to the lawsuit.

During the course of this litigation, the plaintiffs sought discovery of files pertaining to accusations of sexual misconduct against minors by any cleric of the Diocese other than Teczar. The Diocese resisted discovery of this and other information, and the plaintiffs moved to compel.

Following a hearing on the plaintiffs' second motion to compel, the trial court ordered the Diocese to submit the files of the clerics who had been accused of sexual misconduct against minors to the court for an in camera inspection. The Diocese complied and submitted 726 pages of documents. These documents ("the cleric files") relate to allegations of sexual misconduct against seven clerics, including Father Tu, and they include the sixteen pages of Father Tu's personnel file ("the Tu files"). After inspecting the cleric files in camera, the trial court ruled that the files were discoverable and ordered them to be produced to the plaintiffs subject to a protective order sealing the

2

documents.[3]  Thereafter, the trial court denied the defendants' motion for summary judgment, the parties settled, and the trial court entered an agreed final order of dismissal with prejudice.

Upon dismissing the case, the trial court signed an agreed order providing for the return of the cleric files to the Diocese and released the cleric files to the Diocese's attorney.  On the same day, appellees The Dallas Morning News, L.P. and The Fort Worth Star-Telegram ("the newspapers") intervened in the dismissed lawsuit pursuant to Texas Rule of Civil Procedure 76a, requesting that the cleric files be unsealed and made open for public inspection.  Father Tu and the other six clerics subsequently intervened, contending that their files were not court records and that, even if they were, that they should remain sealed.[4]

---

[3] ⬛ To the extent the trial court ordered that the documents could only be "filed . . . under seal," it appears to have done so without regard to the procedures mandated by Texas Rule of Civil Procedure 76a. *See Clear Channel Commc'ns, Inc. v. United Servs. Auto. Ass'n*, 195 S.W.3d 129, 136–37 (Tex. App.—San Antonio 2006, no pet.) (reversing trial court's protective order requiring certain documents to be filed under seal because order was entered without regard to rule 76a).  We view the trial court's subsequent determination that the documents should not be sealed as a reconsideration of its prior ruling.

[4] ⬛ Additional alleged victims of the clerics—John Does III, IV, V, and VI and Jane Does I, II, III, and IV ("the Doe intervenors")—had also intervened and were aligned with the newspapers.  Some of the Doe intervenors asserted additional claims, which were ultimately severed from the rule 76a proceeding.  None of the Doe intervenors are parties to this appeal.  Although the Doe

3

On February 23, 2006, the trial court conducted the rule 76a hearing to determine whether to unseal the files. At the hearing, the parties presented arguments and evidence in the form of newspaper articles and affidavits. The newspapers and the Doe intervenors argued that the files should be unsealed because the public was exposed to a continuing threat, the clerics had no right of privacy in actions of sexual misconduct, and there was a legitimate public interest in the information. The Diocese, Father Tu, and the other six clerics asserted that the files should remain sealed because they had personal privacy rights in the files and that the "voluminous" newspaper articles about the clerics showed that the public was already aware of the allegations.

After the hearing, two Doe intervenors filed "rebuttal affidavits" to contradict Father Tu's attorney's statements at the hearing that they never alleged he abused them and they do not want to be involved "in this media circus." The two affiants averred, among other things, that Father Tu had sexually abused them; that they had never recanted or denied the abuse; and that they did, indeed, want Father Tu's files to be unsealed.

In response to the affidavits, Father Tu filed a "Motion for Immediate Limited Discovery on Certain Affidavits and Supplemental Brief Regarding

intervenors eventually revealed their names, we use the pseudonyms for consistency with the parties' briefing.

4

Rebuttal Affidavits," seeking to depose the affiants. The trial court never ruled on this motion, however, and no depositions were taken.

In a letter dated March 10, 2006, after conducting further in camera review of the documents, the trial court stated that the Tu files were "court records" and that "the record is insufficient to rebut the presumption of openness as established by rule 76a and related case law." The trial court later redacted information from the 726 pages of documents and allowed counsel for the Diocese, Father Tu, and the other six clerics "to review the redacted documents and . . . advise the court of any clerical errors."

Four months later, on July 25, 2006, the trial court signed an order which essentially followed the pronouncements of its March 10 letter. The trial court ruled that the clerics' files were court records under rule 76a(2) and redacted information from the Tu files that the trial court found either implicated privacy rights of third parties; would have a chilling effect on other claimants of clergy

abuse; might re-traumatize the claimants; would lead to the identity of a claimant or lay member involved in the Diocese's internal review process; or related to medical or mental health treatment.[5] Father Tu appeals this order.[6]

## II. Father Tu's Motion for Discovery

In his first point, Father Tu contends that the trial court improperly refused to grant or rule on his motion for discovery, resulting in the denial of his right to cross-examine the Doe intervenors and affiants and denying him due process.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion.[7] The objecting party must also obtain an express or implied ruling from the trial court, or object to the trial court's refusal to rule.[8] If a party fails to preserve error, the complaint is waived.[9]

---

[5] The newspapers do not challenge the trial court's redactions.

[6] The trial court stayed the release of the Tu files pending resolution of this appeal.

[7] TEX. R. APP. P. 33.1(a); *see also* TEX. R. EVID. 103(a)(1).

[8] TEX. R. APP. P. 33.1(a)(2); *Frazier v. Yu,* 987 S.W.2d 607, 610 (Tex. App.—Fort Worth 1999, pet. denied).

[9] *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g).

The trial court's order is silent as to the disposition of Father Tu's motion for discovery, and we have found nothing in the record indicating that the trial court ever, expressly or implicitly, ruled on the motion. There is also nothing in the record showing that Father Tu objected to the trial court's refusal to rule. We, therefore, hold that Father Tu did not preserve the error he complains about on appeal, and we overrule his first point.[10]

### III. Father Tu's Files Are "Court Records" Under Rule 76a(2)

In his second point, Father Tu argues that the trial court improperly found that the Tu files were court records under rule 76a(2). We review the trial court's decisions under rule 76a for an abuse of discretion.[11] Under this standard, we will not disturb the trial court's ruling unless the trial court acted

---

[10] *See* TEX. R. APP. P. 33.1(a)(2); *Mead v. RLMC, Inc.*, 225 S.W.3d 710, 713–14 (Tex. App.—Fort Worth 2007, pet. denied) (holding that fact that trial court granted party's motion for summary judgment did not allow inference that trial court sustained that party's objections); *Fox v. Wardy*, 224 S.W.3d 300, 303 (Tex. App.—El Paso 2005, pet. denied) (holding issue not preserved where appellant failed to obtain ruling on his motion); *Goodchild v. Bombardier-Rotax GMBH Motorenfabrik*, 979 S.W.2d 1, 6–7 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (op. on reh'g) (holding that appellant failed to preserve error on motion to compel discovery where trial court never ruled on motion and appellant failed to object to refusal to rule).

[11] *Gen. Tire, Inc. v. Kepple*, 970 S.W.2d 520, 526 (Tex. 1998) (prescribing abuse of discretion standard of review for determinations of whether documents are court records and whether to seal documents).

7

without reference to any guiding rules or principles or in a manner that is arbitrary and unreasonable.[12]

The pertinent part of rule 76a defines "court records" as follows:

(a)  all documents of any nature filed in connection with any matter before any civil court, except:

> (1)  documents filed with a court in camera, solely for the purpose of obtaining a ruling on the discoverability of such documents;
>
> (2)  documents in court files to which access is otherwise restricted by law;
>
> (3)  documents filed in an action originally arising under the Family Code.
>
> . . . .

(c)  discovery, not filed of record, concerning matters that have a probable adverse effect upon the general public health or safety, or the administration of public office, or the operation of government, except discovery in cases originally initiated to preserve bona fide trade secrets or other intangible property rights.[13]

Whether documents are court records is a threshold determination under rule 76a.[14]  When the character of documents is disputed, the party claiming

---

[12] *E.g.*, *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985); *Wood v. Moriarty*, 940 S.W.2d 359, 364 (Tex. App.—Dallas 1997, no writ); *Upjohn Co. v. Freeman*, 906 S.W.2d 92, 95 (Tex. App.—Dallas 1995, no writ).

[13] TEX. R. CIV. P. 76a(2).

[14] *Kepple*, 970 S.W.2d at 524.

8

that the documents are open to the public has the burden to prove by a preponderance of the evidence that the documents are court records.[15] The trial court determines whether the documents are court records based upon evidence, which may include the documents themselves submitted in camera.[16]

The newspapers contend that the Tu files are court records because they were filed with the trial court and, alternatively, because they are unfiled discovery that concern matters that have a probable adverse effect upon the general public health or safety.[17] Father Tu argues that the documents were never filed with the court and are not unfiled discovery concerning matters that have a probable adverse effect upon the general public health or safety.

---

[15] *Roberts v. West*, 123 S.W.3d 436, 441 (Tex. App.—San Antonio 2003, pet. denied); *Upjohn*, 906 S.W.2d at 95–97; *Eli Lilly & Co. v. Biffle*, 868 S.W.2d 806, 808 (Tex. App.—Dallas 1993, no writ); *BP Prods. N. Am., Inc. v. Houston Chronicle Publ'g Co.*, Nos. 01-05-01032-CV, 01-05-01033-CV, 2006 WL 1350303, at *2 (Tex. App.—Houston [1st Dist.] May 18, 2006, no pet.).

[16] *Eli Lilly & Co.*, 868 S.W.2d at 809.

[17] *See* TEX. R. CIV. P. 76a(2).

A document is "filed" when it is delivered or tendered to, or otherwise put under the custody or control of, the court's clerk.[18] This is true regardless of whether the document is file-stamped.[19]

The record before us shows that the Tu files were placed under the custody and control of the trial court clerk during the pendency of the underlying lawsuit. John Doe II's Response to Defendants' Motions for Summary Judgment recites that "Exhibit 94: Sealed envelopes containing 'Other cleric files' of the Fort Worth Diocese" was "attached" and "filed contemporaneously." Accompanying the response is a letter dated November 1, 2004, from Tahira Khan Merritt, counsel for John Does I and II, to the Clerk of the 141st District Court, requesting that the clerk file the response, six appendices of evidence, and two sealed volumes of evidence, all of which the letter indicates are "[e]nclosed for filing." Both the response and the letter are file-stamped. Moreover, Father Tu admitted in his plea in intervention that the documents were "submitted" to the trial court in Exhibit 94 in connection with

---

[18] *Jamar v. Patterson*, 868 S.W.2d 318, 319 (Tex. 1993); *Biffle v. Morton Rubber Indus., Inc.*, 785 S.W.2d 143, 144 (Tex. 1990).

[19] *Morton Rubber Indus., Inc.*, 785 S.W.2d at 144.

10

the summary judgment proceedings, and the trial court made several references to the documents throughout the proceedings.[20]

Based on these facts, we conclude that the Tu files were "filed" with the trial court for purposes of rule 76a.[21] We, therefore, hold that the trial court did not abuse its discretion in finding them to be court records under rule 76a(2). We overrule Father Tu's second point.

### IV. Father Tu's First Amendment Rights Are Not Violated by Unsealing his Files

In his third point, Father Tu contends that the trial court's order unsealing his files violates his privacy rights in the documents under the federal and state constitutions and canon law.[22] We disagree.

---

[20]⬆ For example, in its "Agreed Order for Return of 'Other Cleric Files' . . .," dated April 28, 2005, the trial court recited that Exhibit 94 was "submitted" in support of plaintiffs' response to defendants' motions for summary judgment. Further, in a February 21, 2006 letter, the trial court referred to the documents as being "attached to the Plaintiffs' summary judgment response as summary judgment evidence," and it ruled that "the documents *filed with the Court* as summary judgment evidence are 'court records.'" [Emphasis added.] In its "Order Transmitting Sealed Summary Judgment Evidence," dated April 18, 2007, by which the trial court transmitted two sealed volumes to this court, the trial court recited that the sealed evidence was "filed" on November 1, 2004.

[21]⬆ *See Compaq Computer Corp. v. Lapray*, 75 S.W.3d 669, 673–74 (Tex. App.—Beaumont 2002, no pet.) (holding that discovery subject to protective order became court records when filed with trial court).

[22]⬆ Father Tu cites no legal authority to support his canon law argument. *See* TEX. R. APP. P. 38.1(h); *Cooper v. McFadin*, No. 02-06-00173-CV, 2007

11

Once the trial court finds that documents are court records under rule 76a, the documents are presumed to be open to the public.[23] The party moving for sealing has the burden to rebut the presumption of openness by a preponderance of evidence.[24]

Court records may be sealed under rule 76a(1) only upon a showing of all of the following:

(a)  a specific, serious and substantial interest which clearly outweighs:

(1)  th[e] presumption of openness;

(2)  any probable adverse effect that sealing will have upon the general public health or safety;

(b) no less restrictive means than sealing records will adequately and effectively protect the specific interest asserted.[25]

---

WL 2405124, at *1 (Tex. App.—Fort Worth Aug. 24, 2007, pet. denied) (mem. op.) (holding that rule 38.1(h) requires a brief to contain both citation to authority and substantive analysis in regard to an issue, and the failure to include either waives an issue on appeal).

[23] TEX. R. CIV. P. 76a(1); *Eli Lilly & Co.*, 868 S.W.2d at 809.

[24] *See Eli Lilly & Co.*, 868 S.W.2d at 808.

[25] *See* TEX. R. CIV. P. 76a(1).

12

In deciding whether or not to seal court records, the trial court must "balance the public's interest in open court proceedings against an individual litigant's personal or proprietary interest in privacy."[26]

Under both the United States and Texas Constitutions, an individual has a privacy interest in avoiding the disclosure of certain personal matters.[27] Marital relationships, procreation, contraception, family relationships, child rearing and education, and medical records fall within the constitutionally protected zone of privacy.[28] Information contained in employment records may, under some circumstances, be included within this protected zone.[29]

Not every publication of intimate or embarrassing information, however, constitutes an invasion of the constitutionally protected zone of privacy.[30]

---

[26] *Kepple*, 970 S.W.2d at 526.

[27] *Whalen v. Roe*, 429 U.S. 589, 599–600, 97 S. Ct. 869, 876 (1977); *Indus. Found. of the S. v. Tex. Indus. Accident Bd.*, 540 S.W.2d 668, 679 (Tex. 1976), *cert. denied*, 430 U.S. 931 (1977).

[28] *Whalen*, 429 U.S. at 599–600, 97 S. Ct. at 876; *Indus. Found.*, 540 S.W.2d at 679.

[29] *Humphreys v. Caldwell*, 881 S.W.2d 940, 946 (Tex. App.—Corpus Christi 1994, no writ); *Kessell v. Bridewell*, 872 S.W.2d 837, 841–42 (Tex. App.—Waco 1994, no writ); *Fox v. Anonymous*, 869 S.W.2d 499, 504 (Tex. App.—San Antonio 1993, writ denied), *abrogated on other grounds by Kepple*, 970 S.W.2d at 526.

[30] *Indus. Found.*, 540 S.W.2d at 680.

Under Texas law pertaining to the tort of invasion of privacy for the public disclosure of embarrassing private facts, one's privacy is not invaded if the matter publicized is of legitimate public concern.[31] We decide as a matter of law whether a matter is of legitimate public concern.[32] This "newsworthiness" test is construed broadly and may include news in the sense of current events, commentary on public affairs, and other information "embrac[ing] all issues about which information is needed or appropriate so that individuals may cope with the exigencies of their period."[33]

Although there is a presumption under Texas law that the public has no legitimate interest in private embarrassing facts about private citizens, whether a given matter is of legitimate public concern depends on the factual context of each particular case, the nature of the information, and the public's legitimate interest in its disclosure.[34] Criminal allegations related to sexual

---

[31] *Fort Worth Star-Telegram v. Doe*, 915 S.W.2d 471, 472, 474–75 (Tex. 1995); *Indus. Found.*, 540 S.W.2d at 682.

[32] *Lowe v. Hearst Commc'ns, Inc.*, 487 F.3d 246, 250 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1345–46 (5th Cir.), *cert denied*, 513 U.S. 868 (1994).

[33] *Lowe*, 487 F.3d at 250; *Campbell v. Seabury Press*, 614 F.2d 395, 397 (5th Cir. 1980).

[34] *Fort Worth Star-Telegram*, 915 S.W.2d at 474; *Indus. Found.*, 540 S.W.2d at 685.

misconduct are of legitimate public concern, so publication of these allegations does not violate an individual's right to privacy.[35]  In such a case, even documents protected from disclosure under canon law may be made public.[36]

The Tu files contain allegations that in the mid-1970s Father Tu inappropriately kissed two minor sisters, and they discuss the Diocese's investigation and subsequent actions with regard to Father Tu.  In addition, the affidavits of the Doe intervenors contain the following additional allegations against Father Tu:

- Jane Doe I alleged that Father Tu fondled her breasts when she was thirteen years old.

---

[35] *See Lowe*, 487 F.3d at 250–52 (stating "there is legitimate public interest in facts tending to support an allegation of criminal activity, even if the prosecutor does not intend to pursue a conviction"); *Fort Worth Star-Telegram*, 915 S.W.2d at 472, 474–75 (affirming summary judgment for newspaper in invasion of privacy case where article disclosed facts that were of legitimate public concern).

[36] *See Watson v. Jones*, 80 U.S. (13 Wall.) 679, 732–33 (1871) (recognizing that churches exist and function within the civil community and thus are as amenable as other societal entities to rules governing property rights, torts, and criminal conduct); *Franco v. Franco*, 81 S.W.3d 319, 340–44 (Tex. App.—El Paso 2002, no pet.) (applying civil discovery rules to documents claimed to be privileged by canon law); *see also Pennsylvania v. Stewart*, 690 A.2d 195, 202 (Pa. 1997) (holding that compelled production of documents for in camera review, and discovery of documents deemed relevant and non-privileged, does not impermissibly intrude upon exercise of religious beliefs and practices even though documents were confidential under canon law).

- Jane Doe II alleged that when she was approximately twenty-one, "very troubled," and vulnerable, Father Tu engaged in offensive and suggestive hugging, touching, and unwelcome kissing on the mouth.

- Jane Doe III alleged that when she was approximately twenty-six, Father Tu made unwanted sexual advances including stroking her arms in a sexually suggestive manner; prolonging hugs; kissing her cheek; brushing the side of her breasts; trying to kiss her on the mouth; pulling her lower body against his own; and cupping her breast.

- Jane Doe IV alleged that when she was approximately nineteen years old, Father Tu touched her in such a way as to cause her breast to shift.

- Jane Doe V alleged that on two or three occasions when she was eight or nine years old, Father Tu held her tightly on his lap and repeatedly kissed her on her face, neck, and mouth, and did the same to her younger sister.

- Jane Doe VI alleged that when she was seven or eight years old, Father Tu held her tightly on his lap and kissed her face, neck, and mouth with wet lips, and did the same to her older sister.[37]

Further, on March 6, 2006, the Doe intervenors filed the affidavit of a seventh

woman alleging the following:

- When she was nine or ten years old, on two occasions, Father Tu put his hand(s) on her knee and began to move his hand(s) up her leg, on her inner thigh. She further stated that her older sister told her that Father Tu also sexually molested her when she was a child.

---

[37] The sisters' mother also alleged by affidavit that her daughters told her that Father Tu held them on his lap and repeatedly kissed their faces, necks, and mouths. The sisters' father alleged by affidavit that he heard rumors that Father Tu had done "bad things" to two little girls, involving kissing them in his office.

Father Tu's alleged conduct reflected in the Tu files is—as he concedes—"inappropriate and unacceptable" and falls within the Texas Family Code's definition of child abuse.[38]    Protection of children from abuse is of the utmost importance in Texas.[39]    We, therefore, conclude that the Tu files are of legitimate public concern and that the trial court's refusal to seal the documents does not violate Father Tu's First Amendment rights to privacy.[40]

---

[38] ▲ *See* TEX. FAM. CODE ANN. § 261.001(1)(E) (Vernon 2002 & Supp. 2007) (defining abuse as including "sexual conduct harmful to a child's mental, emotional, or physical welfare").

[39] ▲ *E.g.*, *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (recognizing the State's duty to protect the safety and welfare of children); *Golden Spread Council, Inc. v. Akins*, 926 S.W.2d 287, 291–92 (Tex. 1996) (recognizing legislature's strong policy and public's interest in protecting children from abuse).

[40] ▲ *See City of Sherman v. Henry*, 928 S.W.2d 464, 471–72, 474 (Tex. 1996), *cert denied*, 519 U.S. 1156 (1997) (holding that neither United States nor Texas Constitutions provide a right of privacy in allegations of sexual misconduct outside of the marriage and family relationships); *Fort Worth Star-Telegram*, 915 S.W.2d at 472, 474–75.

Because of this holding, we need not address the probable adverse effect that sealing would have upon the general public health or safety, or whether less restrictive means than sealing would adequately and effectively protect these two interests. *See* Lloyd Doggett & Michael J. Mucchetti, *Public Access to Public Courts: Discouraging Secrecy in the Public Interest*, 69 TEX. L. REV. 643, 678 (1991) ("After establishing that a 'specific, serious and substantial interest' clearly outweighs *both* the openness presumption *and* any probable adverse effect upon the health or safety, a movant must *also* show that 'no less restrictive means than sealing records will adequately and effectively protect the specific interest asserted.'") (emphasis added).

17

## V.  All Privileged Medical Information in the Tu Files
## Was Appropriately Redacted

Father Tu also asserts that the documents should remain sealed because they contain privileged medical and mental health information.  The trial court, however, redacted the medical and mental health treatment information from the documents.[41]   The redactions were an appropriate and effective way to shield the privileged information.[42]

Father Tu, however, argues that the trial court improperly failed to redact a diagnosis made by laymen in which they found, after interviewing one of the alleged victims (who was a minor at the time of the incident), that the alleged incident constituted pedophilic behavior.

The mental health privilege serves to encourage the full communication necessary for effective treatment and to prevent unnecessary disclosure of highly personal information.[43]  Texas Rule of Evidence 510 provides in pertinent

---

[41] *See* TEX. R. EVID. 509, 510; TEX. HEALTH & SAFETY CODE ANN. § 611.002 (Vernon 2003).

[42] *See, e.g.*, *R.K. v. Ramirez*, 887 S.W.2d 836, 842–43 (Tex. 1994) (holding that even where, in limited circumstances, medical and mental health privileges yield to discovery, certain other information in documents "remains privileged and must be redacted or otherwise protected"); *Eli Lilly & Co. v. Marshall*, 850 S.W.2d 155, 157, 160 (Tex. 1993) (approving redaction of names in accordance with "compelling public interest considerations").

[43] *R.K.*, 887 S.W.2d at 840.

18

part that "[r]ecords of the . . . diagnosis, evaluation, or treatment of a patient which are created or maintained by a professional are confidential and shall not be disclosed in civil cases."[44] The rule defines "patient," in pertinent part, as a person who "consults, or is interviewed by, a professional for purposes of diagnosis, evaluation, or treatment of any mental or emotional condition or disorder."[45] The rule and definition in Texas Health and Safety Code sections 611.001 and 611.002 are nearly identical to rule 510.[46]

The finding at issue was made by an investigative committee after interviewing one of Father Tu's alleged victims. The committee was not comprised of medical professionals, and there is no evidence that the committee of laymen either treated, evaluated, diagnosed, or consulted with Father Tu. Therefore, he was not a "patient" as defined by the rule or statute, and the investigative committee's finding is not a mental health record that is

---

[44] TEX. R. EVID. 510(b)(2).

[45] TEX. R. EVID. 510(a)(2)(A).

[46] Section 611.002 provides that "records of the . . . diagnosis, evaluation or treatment of a patient that are created or maintained by a professional, are confidential." TEX. HEALTH & SAFETY CODE ANN. § 611.002(a). That statute defines patient as "a person who consults or is interviewed by a professional for diagnosis, evaluation, or treatment of any mental or emotional condition or disorder, including alcoholism or drug addiction." *Id.* § 611.001(1) (Vernon 2003).

privileged under rule 510 or section 611.002.[47] Accordingly, we hold that the trial court did not abuse its discretion by failing to redact the committee's finding.[48]

We affirm the trial court's order.

PER CURIAM

PANEL A:  CAYCE, C.J.; HOLMAN and MCCOY, JJ.

DELIVERED:  June 19, 2008

---

[47] *See* TEX. R. EVID. 510(a)(2); TEX. HEALTH & SAFETY CODE ANN. § 611.001(1).

[48] Father Tu also asserts summarily that "the degree of inappropriate conduct" reflected on page 210 "is obscured by the redaction of information which would shed light on the Affiant's perspective."  We overrule this argument as well. *See* TEX. R. APP. P. 38.1(h); *Cooper*, 2007 WL 2405124, at *1.