

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-24-00036-CV

THE STATE OF TEXAS FOR THE BEST INTEREST AND PROTECTION OF L.J.

On Appeal from the County Court
Harrison County, Texas
Trial Court No. 2003-348-M

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

# MEMORANDUM OPINION

This case concerns the release of records of mental-health proceedings pursuant to Section 571.015 of the Texas Health and Safety Code. The statutory standard for the release of such records is "justified and in the public interest." TEX. HEALTH & SAFETY CODE ANN. § 571.015(b)(1). Here, the requesting parties are Harrison County (County) and Southern Health Partners, Inc. (SHP), a company under contract to provide medical care and mental-health screening at the county jail. The County and SHP are defendants in a federal lawsuit accusing them of a practice of refusing to transfer jail inmates to in-patient psychiatric treatment facilities. The records sought pertain to L.J.,[1] the decedent in the federal lawsuit, namely, records of her multiple involuntary psychiatric commitment proceedings in the County. At a hearing below, the parties addressed the multiple commitment proceedings in a consolidated fashion. The trial court took judicial notice of the contents of the most recent commitment proceeding. The trial court ordered the records released to counsel for L.J.'s estate, subject to a protective order of the federal court.

We find, under these circumstances, that there was no abuse of discretion.

We affirm.

---

[1]The Texas Mental Health Code requires that an involuntary commitment proceeding "be styled using the proposed patient's initials" rather than their full name. TEX. HEALTH & SAFETY CODE ANN. § 574.002(a) (Supp.). However, Appellants have previously made L.J.'s full name public by including it in their Original Complaint in the federal suit as well as in their filings in the state court. Nonetheless, we use her initials.

## I. Factual Background

### A. The Federal Complaint

L.J. died on January 13, 2022, in a Harrison County hospital approximately an hour after being taken there from the Harrison County Jail. L.J.'s son and her estate sued the County and SHP. L.J.'s son and her estate allege in their federal complaint that the County and SHP violated L.J.'s rights and caused her death.[2] Among other things, they allege in their federal complaint that L.J. "should not have been jailed but instead transferred to an appropriate in-patient mental health facility." They also allege that L.J. was not transferred to a mental-health facility because the County and SHP had "policies, practices and/or customs" that violated L.J.'s rights and caused her death. They further allege that "Harrison County and/or SHP, while knowing that detainees needed immediate in-patient mental health care, would incarcerate such individuals in lieu of obtaining such needed care."

L.J.'s son and her estate allege in their complaint that those "policies, practices and/or customs" can be seen over the course of the County's interactions with L.J. They allege that (1) L.J. had been in and out of the Harrison County jail fifteen times since 2011, (2) she had "serious mental health issues [that] precluded her from continuing to be incarcerated in the Harrison County jail," and (3) the County knew that L.J. had had mental health issues since childhood. They further allege that the County jailed L.J. repeatedly anyway. ("[O]nce again,

---

[2] *See Robert Christopher Young, Jr., individually; and LaShun Fuqua, as indep. adm'r of and on behalf of the Estate of [L.J.], and [L.J]'s heir(s)-at-law v. Harrison Cnty., Tex., & S. Health Partners, Inc. a/k/a SHP*, Case No. 2:23-cv-00102-JRG (E.D. Tex., Dkt. 1, Mar. 10, 2023).

3

the County chose to incarcerate [L.J.] when she undoubtedly needed extensive in-patient mental health treatment. . . . Regardless, the County continued to incarcerate [L.J.] over time.").

L.J.'s son and her estate allege that L.J. "was on the Rusk State Hospital wait list[,]" describing that facility as "an in-patient hospital providing psychiatric treatment and care," which included "maximum-security forensic psychiatric services for adults." They allege that the County and SHP had duties to L.J. and that the County and SHP "could not shirk those obligations simply because a chosen hospital had a wait list for beds."

### B.      The Federal Court's Orders

On July 25, 2023, the parties to the federal suit agreed to entry of, and the federal court entered, an agreed protective order regarding the use of documents in that case.[3]

In the federal lawsuit, the County and SHP moved for the release of the records of L.J.'s involuntary psychiatric commitments in the County. The County and SHP acknowledged in their motion that the records would not be released to the public but instead would be subject to the protective order. The motion was originally agreed to by all parties. The federal court, however, found that the agreed motion "did not state adequate legal grounds for relief" and ordered that the parties present further briefing on topics including the authority of the federal court to order state officials to release the records. The additional briefing proved unsatisfactory to the federal court.

---

[3]The protective order provided that any party producing documents may designate the documents as confidential. If the parties disagreed as to the confidential nature of the documents, the documents would remain confidential until a contrary determination was made by the federal court. Confidential information would be used only for purposes of the federal litigation, access to the documents would be restricted, and, upon termination of the federal suit, any confidential information would be returned to the party that produced the documents. The terms of the protective order will continue to be binding after termination of the federal litigation, except for information that becomes a matter of public record.

On September 28, 2023, the federal court denied the motion, principally on grounds that, pursuant to Texas statutory law, determining whether the records should be released was within the purview of designated state courts, including the county court which had presided over the commitment proceedings at issue.

**C.      State Court Proceedings Giving Rise to this Appeal**

Following the denial of their motion in federal court, the County and SHP (Appellees) requested the records in the County Court of Harrison County under Section 571.015 of the Texas Health and Safety Code.  That was done through motions filed in eleven separate commitment proceedings.  L.J.'s son and the administrator of her estate (Appellants) opposed the motions with a consolidated response.

The County Court, the Honorable Rebecca Simpson presiding,[4] conducted a hearing on the motions.  The trial court heard arguments of counsel and took judicial notice of the file in cause number 2019-03-M, the most recent of L.J.'s involuntary commitment proceedings for which records were sought.  Appellants urged that the trial court use the "justified and in the public interest" test.  Both Appellants and Appellees put forward arguments on what they contended would, or would not, meet that test.  Neither, however, urged that the statute was ambiguous or in need of judicial construction.  At the conclusion of the hearing, the trial court found that the "inspection, use, and copying of the[] mental health records of [L.J.] [wa]s justified and in [the] public interest."  The trial court further found that "the reasons for the use, inspection, the copying, fall within the applicable statutory exceptions."  The trial court observed

---

[4]The sitting county judge of Harrison County recused himself.  The regional presiding judge appointed Judge Simpson.

that the records would be "protected in federal court" by the protective order.  By written order addressing the records and cause numbers collectively, the trial court ordered release of the sealed records to Appellants' trial counsel for use in the federal lawsuit.[5]

This appeal followed.[6]

## II. Issue on Appeal

In one issue, Appellants urge that the trial court abused its discretion by granting Appellees' motions to obtain L.J.'s involuntary commitment records spanning a time period from 2003 to 2019 because "Appellees failed to demonstrate the release of the records was both justified and in the public interest, as required by Texas Health & Safety Code § 571.015(b)."

## III. Standard of Review

We apply an abuse of discretion standard of review.  Neither side points to authority specifically addressing the standard of review of a trial court's Section 571.015(b) "justified and in the public interest" determination.  *See* TEX. HEALTH & SAFETY CODE ANN. § 571.015(b)(1). Both sides, however, urge that abuse of discretion is the appropriate standard.[7]  We agree.  In *General Tire, Inc., v. Kepple*, the Texas Supreme Court stated:

---

[5]Appellants initially petitioned for a writ of mandamus against the trial court based upon its ruling unsealing the records, but we denied the mandamus petition as Appellants had not demonstrated that they lacked an adequate remedy at law. *In re Young*, No. 06-24-00054-CV, 2024 WL 2886183, at *2 (Tex. App.—Texarkana June 10, 2024, orig. proceeding) (mem. op.).

[6]Shortly into the appellate process, we granted Appellants' motion to consolidate the eleven trial court matters into one cause number on appeal. *State for L.J.*, Nos. 06-24-00036-CV, 06-24-00037-CV, 06-24-00038-CV, 06-24-00039-CV, 06-24-00040-CV, 06-24-00041-CV, 06-24-00042-CV, 06-24-00043-CV, 06-24-00044-CV, 06-24-00045-CV, and 06-24-00046-CV, 2024 WL 2859385, at *1 (Tex. App.—Texarkana June 6, 2024, no pet.) (per curiam) (mem. op.).

[7]By letter of December 5, 2024, Appellants belatedly asserted that the statute should be construed.  Appellants concede they made no "explicit" request that the statute be construed.  But they urge that they made an "implied"

6

> The nature of Rule 76a comports with an abuse of discretion review standard. In determining whether court records should be sealed, a trial court is not called upon to make a factual finding per se, but rather is required to balance the public's interest in open court proceedings against an individual litigant's personal or proprietary interest in privacy. Such a decision necessarily requires the exercise of judicial discretion, and should be reviewed on that basis. Accordingly, we hold that Rule 76a decisions must be reviewed for abuse of discretion.

*Gen. Tire, Inc., v. Kepple*, 970 S.W.2d 520, 526 (Tex. 1998) (footnote omitted) (citation omitted); *see HouseCanary, Inc. v. Title Source, Inc.*, 622 S.W.3d 254, 259 (Tex. 2021) ("We review a trial court's decision on a Rule 76a motion to seal court records for an abuse of discretion." (citing *Gen. Tire*, 970 S.W.2d at 526)). While the Rule 76a analysis is not identical to the Section 571.015(b) "justified and in the public interest" analysis, we find that each involves a sufficiently similar exercise of judicial discretion by the trial court as to be subject to the same standard of review.

"An abuse of discretion occurs where a trial court acts arbitrarily, unreasonably, or without consideration of guiding principles or clearly fails to analyze or apply the law correctly." *Pleasant Grove Indep. Sch. Dist. v. FieldTurf USA Inc.*, 648 S.W.3d 608, 615 (Tex. App.—Texarkana 2022, pet. denied) (op. on remand) (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding)).

The party contending that the trial court abused its discretion "has the burden to bring forth a record showing such abuse." *MSW Corpus Christi Landfill, Ltd. v. Gulley-Hurst, L.L.C.*,

---

request for construction and that, "[c]onsequently, in this case, de novo review is appropriate under the abuse of discretion standard." We do not address the letter other than to observe that at no point did Appellants put forward a proposed construction of "justified and in the public interest," whether in the trial court or in this Court. Accordingly, we do not reach the question of the construction of those words, nor do we reach the question of the standard of review to apply when assessing whether the trial court should be reversed for failing to adopt a proposed construction it was never given. *See* TEX. R. APP. P. 33.1.

7

664 S.W.3d 102, 109 (Tex. 2023) (per curiam) (quoting *Simon v. York Crane & Rigging Co.*, 739 S.W.2d 793, 795 (Tex. 1987)). "Absent such a record, the reviewing court must presume that the evidence before the trial judge was adequate to support the decision." *Id.* (quoting *Simon*, 739 S.W.2d at 795).

## IV.    Substantive Law

The Texas Legislature has provided the governing substantive test for handling the records of mental-health proceedings:

> (a)    Each paper in a docket for mental health proceedings in the county clerk's office, including the docket book, indexes, and judgment books, is a public record of a private nature that may be used, inspected, or copied only under a written order issued by the county judge, a judge of a court that has probate jurisdiction, or a judge of a district court having jurisdiction in the county in which the docket is located.
>
> (b)    A judge may not issue an order under Subsection (a) unless the judge enters a finding that:
>
> > (1)    the use, inspection, or copying is justified and in the public interest; or
> > (2)    the paper is to be released to the person to whom it relates or to a person designated in a written release signed by the person to whom the paper relates.
>
> (c)    In addition to the finding required by Subsection (b), if a law relating to confidentiality of mental health information or physician-patient privilege applies, the judge must find that the reasons for the use, inspection, or copying fall within the applicable statutory exemptions.[8]

---

[8]We do not reach the statutory exemptions referenced by Section 571.015(c) of the Texas Health and Safety Code. TEX. HEALTH & SAFETY CODE ANN. § 571.015(c). The Appellants frame the issue as a question of the Section 571.015(b)(1) "justified and in the public interest" analysis. Thereafter, Appellants reference Rule 509 of the Texas Rules of Evidence, but only to urge that it should not be imported into the "justified and in the public interest" analysis. ("[E]ven if [TEX. R. EVID.] 509 applied in this case (it does not), its application would not support the release of [L.J.]'s sealed involuntary commitment records."). The Appellees discuss Rules 509 and 510 of the Texas Rule of Evidence in the context of the "justified and in the public interest" analysis. *See* TEX. R. EVID. 509, 510.

(d)     The papers shall be released to an attorney representing the proposed patient in a proceeding held under this subtitle.

(e)     This section does not affect access of law enforcement personnel to necessary information in execution of a writ or warrant.

TEX. HEALTH & SAFETY CODE ANN. § 571.015.

The term "justified and in the public interest" has been in use regarding mental-health records for almost sixty years.  It predates the Texas common law right of privacy.

Article 5547-12 of Vernon's Texas Civil Statutes was created as part of the Texas Mental Health Code of 1957.  Initially, Article 5547-12 provided that the papers of mental-health proceedings were to be maintained by the county clerk.  Texas Mental Health Code, 55th Leg., R.S., ch. 243, § 12, 1957 Tex. Gen. Laws 505, 508.  No provision was made regarding the confidentiality of the records.  That proved to be a problem.

In 1965, the Legislature observed that the papers of mental-health proceedings were "exposed . . . to the use by curiosity seekers, scandalmongers, blackmailers, and others."  Act of May 26, 1965, 59th Leg., R.S., ch. 684, § 4, 1965 Tex. Gen. Laws 1578, 1578.  To address that concern, the Legislature added Article 5547-12a.  That is where "justified and in the public interest" first appears.  Article 5547-12a of the Vernon's Texas Civil Statutes provided:

> Each and every statement of facts, together with each and every other writing which discloses intimate details of the personal and private life of the accused, or patient, or which discloses intimate details of the personal life of any and all members of the family of the accused, or patient, in a mentally ill docket in the office of the county clerk, are hereby declared to be public records of a private

Thus, as presented here, to the extent Rules 509 and 510 were raised, it was in the context of, and subsumed within, the parties' positions on the Section 571.015(b)(1) issue presented by the Appellants.

> nature which may be used, inspected, or copied only by a written order of the county judge, or a probate judge, court of domestic relations judge, or a district judge of the county in which the docket is located; and no such order shall issue until the issuing judge has determined informally to his satisfaction that said use, inspection, or copying is justified and in the public interest.

Act of May 26, 1965, 59th Leg., R.S., ch. 684, § 1, 1965 Tex. Gen. Laws 1578, 1578.

That was how things stood nineteen years later, in 1984, when the Texas Attorney General was faced with the question of whether records of mental-health proceedings were subject to release under the then-current public information laws. TEX. ATTY GEN. OP. No. JM-260 (1984). The Attorney General observed: "The test imposed by article 5547-12 is similar to that used by the Texas Supreme Court in determining whether information is excepted from disclosure by a common law right of privacy." *Id.* at *1 (citing *Indus. Found. of the S. v. Tex. Indus. Accident Bd.*, 540 S.W.2d 668, 683 (Tex. 1976)).[9] The opinion went on to state that "any information 'created or maintained' by a physician under section 5.08 of article 4495b, V.T.C.S., or by a 'professional' as defined in article 5561h, V.T.C.S., may not be released except as indicated in those statutes." *Id.* at *2.

In 1985, the Texas Legislature amended Article 5547-12. The amendment left "justified and in the public interest" in place. However, an informal determination would no longer suffice; the 1985 amendment required "findings" of "justified and in the public interest. The full text of the amendment is as follows:

> Each and every *writing, including but not limited to docket books, indices, judgment books, etc.*, in a mentally ill docket in the office of the county clerk *is*

---

[9]The Texas common law right of privacy was first recognized in 1973. *See Billings v. Atkinson*, 489 S.W.2d 858, 860 (Tex. 1973) (recognizing a Texas common-law right of privacy).

hereby declared to be a public *record* of a private nature which may be used, inspected, or copied only by a written order of the county judge, a *judge of a court having probate jurisdiction*, or a district judge of the county in which the docket is located. *No* such order shall issue until the issuing judge has *entered findings* that said use, inspection or copying is justified and in the public interest, *or that such release is to a patient, former patient, or to a person designated by the patient upon signed and written consent for the release of such information by the allegedly mentally ill person; and that the reasons for such use, inspection, or copying fall within the statutory exemptions to confidentiality of mental health information or physician/patient privilege where the disclosure of such information is in issue. Such records shall be released to any attorney representing the proposed patient in a proceeding held under this code. Nothing herein shall prevent access by law enforcement personnel to necessary information in execution of a writ or warrant*.

Act of April 30, 1985, 69th Leg., R.S., ch. 70, § 4, sec. 12, 1985 Tex. Gen. Laws 477, 478–79.

In 1991, Article 5547-12 was included in a bundle of "nonsubstantive" amendments that codified, inter alia, Section 571.015 of the Texas Health and Safety Code. *See* Act of April 29, 1991, 72nd Leg., R.S., ch. 76, § 1, sec. 571.015, 1991 Tex. Gen. Laws 515, 571–72. Since then, the statute has remained unchanged.

## V. Analysis

This Court was not provided the contents of the commitment proceedings at issue. The trial court was. The trial court took judicial notice of the most recent of the commitment proceedings. *See* Tex. R. Evid. 201. Both parties affirmatively stated on the record that they had no objection to the trial court's taking judicial notice of the contents of the proceedings. Neither party made the records an exhibit, and they were not included in the appellate record.

Therefore, we must presume that the contents of the most recent commitment proceeding are adequate to support the trial court's decision, whether alone, or when read in conjunction with the federal complaint. *See MSW Corpus Christi Landfill, Ltd.*, 664 S.W.3d at 109.

The trial court did not release the records to the public. The trial court released the records to the attorney for L.J.'s son and the administrator of her estate in the federal lawsuit, in which the records are subject to the protective order of the federal court.

Under the circumstances presented, we cannot say that the trial court abused its discretion.

## VI. Conclusion

We affirm the trial court's order signed April 25, 2024, granting Appellees' motion to obtain L.J.'s sealed involuntary commitment records.

Jeff Rambin
Justice

Date Submitted:     November 5, 2024
Date Decided:      January 3, 2025

12